46 A.3d 1247

IN RE RONALD C. KOLLMAN, JR., PETITION
FOR EXPUNGEMENT.

Argued March 13, 2012—Decided July 9, 2012.

*Robert D. Herman* argued the cause for appellant Ronald C. Kollman, Jr.

*Julie H. Horowitz,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*Theodore F.L. Housel,* Atlantic County Prosecutor, attorney).

*Akil S. Roper* argued the cause for amicus curiae Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney; *Mr. Roper* and *Mr. Miller,* on the brief).

*Alexander R. Shalom* argued the cause for amici curiae American Civil Liberties Union of New Jersey Foundation and New Jersey Institute for Social Justice (*Edward L. Barocas,* Legal Director and *Craig R. Levine* attorneys; *Mr. Shalom, Mr. Barocas, Mr. Levine,* and *Jeanne M. LoCicero,* on the brief).

*Analisa Sama Holmes,* Deputy Attorney General, argued on the cause of amicus curiae Attorney General of New Jersey (*Jeffrey S. Chiesa,* Attorney General, attorney).

Chief Justice RABNER delivered the opinion of the Court.

Millions of adults nationwide have criminal records that affect their reentry into society years after their sentence is complete. Criminal records can present barriers to employment, licensing, and housing, among other things.

To afford a second chance to one-time offenders convicted of less serious offenses, who have led law-abiding lives since conviction, the Legislature enacted a law that allows certain records to be expunged after ten years. *N.J.S.A.* 2C:52–2(a). In 2010, the Legislature amended the statute to broaden opportunities for expungement.

Under the revised law, defendants may apply for expungement five years after completing their sentence. *N.J.S.A.* 2C:52–2(a)(2). To decide whether expungement is in the "public interest" in those cases, as the statute requires, courts consider the "nature of the offense" as well as the applicant's "character and conduct since conviction." *Ibid.*

In this appeal, we clarify the factors that courts may consider as part of that fact-sensitive inquiry. We also conclude that defendants seeking expungement have the burden of proof to demonstrate why their case warrants relief under the statute's public-interest prong.

Applying those standards to this case, we conclude that the motion for expungement was improperly denied. We therefore reverse the judgment of the Appellate Division, which affirmed the trial court. We also remand the case to the trial court for further proceedings.

## I.

Beginning around February 2000, law enforcement officials investigated the sale of controlled dangerous substances (CDS) at a nightclub in Somers Point, New Jersey. On three separate occasions, undercover officers allegedly purchased ecstasy from petitioner Ronald C. Kollman, Jr. Kollman sold an officer ten white pills for $200 on the night of February 24, 2000. Hours later on February 25, 2000, Kollman allegedly sold five pills for $100 to another officer. A third officer also allegedly paid Kollman $100 for five pills on April 20, 2000. According to police reports, all three officers identified Kollman as the seller from a photo, and lab testing confirmed that the pills were methylenedioxymethamphetamine, commonly referred to as MDMA or ecstasy.

The police arrested Kollman on June 22, 2000. He was later indicted for three counts of distribution of CDS, *N.J.S.A.* 2C:35–5(a)(1), three counts of possession of CDS with intent to distribute, *N.J.S.A.* 2C:35–5(a)(1), three counts of distribution of CDS within 500 feet of a public zone, *N.J.S.A.* 2C:35–7.1, and three counts of possession of CDS, *N.J.S.A.* 2C:35–10(a)(1). The three counts for each offense corresponded to the three undercover transactions.

Kollman pled guilty on January 16, 2001 to one count of third-degree distribution of CDS, contrary to *N.J.S.A.* 2C:35–5(a)(1) and

*N.J.S.A.* 2C:35–5(b)(13).[1] The plea related only to the sale of ecstasy on February 24, 2000. As part of a plea agreement, the State agreed to recommend (a) dismissal of the remaining charges in the indictment, and (b) a sentence of forty-five days in county jail and probation. The State also agreed not to pursue additional charges related to events at another nightclub in March 2000.

On March 2, 2001, the trial court sentenced Kollman to forty-five days in county jail (subject to daily reporting of at least two days per week, if eligible), a three-year period of probation, and various fines and penalties. Kollman was twenty-three years old at the time of sentencing.

After eighteen months, Kollman's probation was terminated. He successfully completed all of the conditions of probation on September 13, 2002.

Seven and one-half years later, on March 18, 2010, Kollman filed a petition to expunge his conviction. In support of his application, Kollman offered proof that he completed college and received a Bachelor of Science degree from the Richard Stockton College of New Jersey in May 2009. He also certified that he worked full-time while in school and had become active in various community service projects.

Petitioner also submitted twenty-one letters to the court. His employer for sixteen years described him as a hard-working leader and a role model to others. The employer credited Kollman for accepting responsibility and taking steps to improve himself and deter others after his conviction. The District Director for the Boy Scouts of America praised Kollman and his family for hosting annual toy drives to help underprivileged families and teenagers with alcohol and drug abuse problems. Koll-

---

[1] We glean the essential facts from the presentence report petitioner provided and the judgment of conviction submitted jointly by amicus American Civil Liberties Union of New Jersey and the New Jersey Institute for Social Justice. The record does not contain a copy of the plea agreement or transcripts of either the plea or sentencing hearings.

man also served on the district board of directors of a scholarship committee for scouting. Several other community groups submitted letters as well. In addition, various attorneys, friends, and family members wrote about Kollman's strong character and personal growth in recent years.

In Kollman's certification, he added that he had had no trouble with the law since his conviction—not even a speeding ticket. However, he explained that because of his criminal record, he could not teach a boating and safety certificate class, as he had done previously for three to four years, could not help coach wrestling at high school, as he had done before as well, and could not accept an offer to work with the Big Brothers Big Sisters program as a volunteer.

The State opposed Kollman's petition. The State argued that Kollman had already received a benefit when the Court dismissed other charges against him, and that the circumstances and type of his offense, as well as the need for continued access to his criminal record, weighed against expungement of his drug conviction.

The trial judge denied the petition in a written decision. The court acknowledged Kollman's positive activities and behavior since completing probation. Nonetheless, because of the relatively serious nature of the offense and the community's right to be aware of it, the court concluded that expungement would not be consistent with the public interest.

Kollman appealed, and the Appellate Division affirmed the trial court's ruling. The appellate panel agreed that Kollman had led "an exemplary and law-abiding life" since his conviction. After reviewing the trial court's reasoning and conclusion, the panel explained that its task was not to substitute a different judgment for the trial court's exercise of discretion. The Appellate Division found no abuse of discretion in the denial of Kollman's petition.

The trial court and appellate panel each applied the newly amended expungement statute. They both ruled that under the revised law, the State had the burden to prove, by a preponder-

ance of the evidence, that expungement was not in the public interest. The Appellate Division reasoned that the prosecutor, as the public's representative, should shoulder that burden.

We granted Kollman's petition for certification. 207 *N.J.* 189, 23 *A.*3d 414 (2011). We also granted the motions of the Attorney General, the American Civil Liberties Union of New Jersey (ACLU) and the New Jersey Institute for Social Justice (NJISJ) (who filed a joint request), and Legal Services of New Jersey (LSNJ) to participate as amicus curiae.

## II.

Kollman argues that he met the criteria for expungement outlined in *N.J.S.A.* 2C:52-2(a)(2) and (c)(3), and that the trial court abused its discretion when it denied his petition. He contends that once he satisfied the statute's initial requirements—that more than five years had passed since he completed probation, that he had not been convicted of another offense since his conviction, and that his conviction involved a third-degree CDS crime—the State had the burden to demonstrate that expungement was not in the public interest. Kollman argues in the alternative that if it is the applicant's obligation to justify expungement, he has satisfied that burden. He also claims that the trial court's global reasoning would prevent expungement of any third-degree CDS offense despite the Legislature's policy decision to the contrary.

The State does not dispute that Kollman met the initial requirements of the expungement statute. The State maintains, however, that Kollman also had the burden to prove that expungement was in the public interest, and that he failed to meet that test. In the alternative, the State claims that it has proven that expungement of Kollman's drug record was not in the public interest. The State stresses that the public's need for available criminal records outweighed the benefits from their expungement. The State also argues that the recent Appellate Division decision in *In re LoBasso,* 423 *N.J.Super.* 475, 33 *A.*3d 540 (App.Div.2012), supports its position.

The Attorney General has weighed in on the issue of which party bears the burden of proof. He argues that because petitioners are seeking relief and are uniquely knowledgeable about their character and conduct since conviction, they should bear the burden of establishing that expungement is consistent with the public interest.

The ACLU and NJISJ contend that the trial court made errors of law and, in the alternative, that it abused its discretion by improperly considering certain factors. More specifically, they argue that the trial court substituted its judgment for the Legislature's by giving undue weight to the category of offense involved, did not make explicit findings based on the record, considered conduct that was neither proven at trial nor admitted at a guilty plea, and treated petitioner's employment as an aggravating factor. At oral argument, the groups agreed that petitioners should bear the burden of proving that expungement is in the public interest.

LSNJ similarly argues that the trial court did not properly consider each of the factors in the statute when the court assessed the public-interest prong. LSNJ maintains that to deny expungement based solely on the nature of the offense renders meaningless the law's focus on a petitioner's conduct and character since conviction.

The ACLU, NJISJ, and LSNJ also highlight the negative collateral consequences of a criminal record and the corresponding benefits of expungement. They contend that the effects of a criminal record fall disproportionately on people of color. For those and other reasons, they submit that expungement of records for one-time offenders is sound public policy.

### III.

#### A.

This case requires the Court to interpret the recently revised laws relating to the expungement of criminal records.

*N.J.S.A.* 2C:52–1 to –32. The Court's primary goal when interpreting a statute is to determine and carry out the Legislature's intent. *Allen v. V. & A Bros.*, Inc., 208 *N.J.* 114, 127, 26 *A.*3d 430 (2011) (citation omitted). To do so, courts begin with the language of the statute. *DiProspero v. Penn,* 183 *N.J.* 477, 493, 874 *A.*2d 1039 (2005) (citation omitted). If the plain language is clear, the court's task is complete. *N.J. Ass'n of Sch. Adm'rs v. Schundler,* — *N.J.* ——, ——, — *A.*3d —— (2012) (citing *In re Young,* 202 *N.J.* 50, 63, 995 *A.*2d 826 (2010)). If the language of the statute is ambiguous, a court may resort to extrinsic evidence for guidance, including legislative history and committee reports. *Ibid.* (citing *Burnett v. Cnty. of Bergen,* 198 *N.J.* 408, 421, 968 *A.*2d 1151 (2009)).

### B.

■ We start with certain basic principles about the expungement statute. The goal of the statutory scheme is clear. The Legislature expressly stated that expungement

> shall be construed with the primary objective of providing relief to the one-time offender who has led a life of rectitude and disassociated himself with unlawful activity, but not to create a system whereby periodic violators of the law or those who associate themselves with criminal activity have a regular means of expunging their police and criminal records.
>
> [*N.J.S.A.* 2C:52–32.]

In other words, the statute is designed to eliminate "the collateral consequences imposed upon otherwise law-abiding citizens who have had a minor brush with the criminal justice system." *In re T.P.D.,* 314 *N.J.Super.* 643, 648, 715 *A.*2d 1048 (Law Div.1997), *aff'd o.b.,* 314 *N.J.Super.* 535, 715 *A.*2d 994 (App.Div.1998). Consistent with that aim, "[t]he general rule favors expungement of a first-time criminal conviction" after ten years. *In re P.A.F.,* 176 *N.J.* 218, 221, 822 *A.*2d 572 (2003).

■ When a court orders expungement, criminal records are extracted and isolated, *see N.J.S.A.* 2C:52–1(a), but not destroyed, *see In re D.H.,* 204 *N.J.* 7, 17, 6 *A.*3d 421 (2010) (citing *State v. XYZ Corp.,* 119 *N.J.* 416, 421, 575 *A.*2d 423 (1990)). Those records

include complaints, warrants, arrests, docket records, and related items. *N.J.S.A.* 2C:52–1(b).

Expunged records remain available to the courts, prosecutors, and probation officers to set bail, prepare presentence reports, and use at sentencing. *N.J.S.A.* 2C:52–21. The records may also be provided to the Parole Board to assess parole requests, *N.J.S.A.* 2C:52–22, and to the Department of Corrections to classify inmates, *N.J.S.A.* 2C:52–23. Except for certain defined circumstances, though, a successful applicant does not have to answer questions affirmatively relating to expunged criminal records, and his prior arrest, conviction, and related proceedings "shall be deemed not to have occurred." *N.J.S.A.* 2C:52–27.

C.

To evaluate what factors courts should consider under the amended statute, as well as who bears the burden of proof, it is helpful to trace the history of the expungement law.

Prior to the amendment in 2010, and continuing through today, expungement was presumptively available for certain offenses after ten years. *N.J.S.A.* 2C:52–2(a) stated that

> [i]n all cases, except as herein provided, wherein a person has been convicted of a crime under the laws of this State and who has not been convicted of any prior or subsequent crime, whether within this State or any other jurisdiction, and has not been adjudged a disorderly person or petty disorderly person on more than two occasions may, after the expiration of a period of 10 years from the date of his conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later, present a duly verified petition as provided in section 2C:52–7 to the Superior Court in the county in which the conviction was entered praying that such conviction and all records and information pertaining thereto be expunged.

Records of conviction for homicide, kidnapping, aggravated sexual assault, robbery, arson, endangering the welfare of a child, perjury, and other serious offenses could not be expunged. *N.J.S.A.* 2C:52–2(b). Under section 2(c), records of conviction for the sale or distribution of a CDS, or possession with intent to sell, could not be expunged except for offenses involving twenty-five or

less grams of marijuana or five or less grams of hashish. *N.J.S.A.* 2C:52–2(c).

Petitioners had the burden of establishing the objective elements of section 2(a)—the passage of ten years with no additional convictions—by a preponderance of the evidence. *In re D.H.*, *supra*, 204 *N.J.* at 18, 6 *A.*3d 421 (citations omitted); *In re LoBasso*, *supra*, 423 *N.J.Super.* at 488, 33 *A.*3d 540 (citations omitted). After doing so, applicants were "presumptively entitled" to expungement. *In re LoBasso*, *supra*, 423 *N.J.Super.* at 488, 33 *A.*3d 540 (citing *In re J.N.G.*, 244 *N.J.Super.* 605, 610, 583 *A.*2d 364 (App.Div.1990)).

The burden then shifted to the State to overcome the presumption with proof that one of the prerequisites had not been met or with some "other statutory basis for denying relief." *N.J.S.A.* 2C:52–14(a). To meet its burden, the State had to demonstrate some cause for denial by a preponderance of the evidence. *See In re D.H.*, *supra*, 204 *N.J.* at 18, 6 *A.*3d 421 (citing *In re G.R.*, 395 *N.J.Super.* 428, 431, 929 *A.*2d 602 (App.Div.), *certif. denied*, 193 *N.J.* 275, 937 *A.*2d 977 (2007)); *XYZ Corp.*, *supra*, 119 *N.J.* at 422–24, 575 *A.*2d 423; *In re LoBasso*, *supra*, 423 *N.J.Super.* at 489, 33 *A.*3d 540 (citation omitted).

Section 14 of the statute outlines various grounds for denial of relief. Relevant to this case, section 14(b) barred expungement when "[t]he need for the availability of records outweigh[ed] the desirability of having a person freed from any disabilities" tied to a record of conviction. *N.J.S.A.* 2C:52–14(b).[2]

### D.

The Legislature amended the statute and broadened opportunities for expungement in 2010. The amendments responded to a

---

[2] Other grounds for denial include the following: (1) pending civil litigation related to the records sought to be expunged, *N.J.S.A.* 2C:52–14(d); (2) prior expungements (with certain exceptions), *N.J.S.A.* 2C:52–14(e); and (3) prior dismissal of criminal charges after completion of supervisory treatment or some other diversionary program, *N.J.S.A.* 2C:52–14(f).

series of recommendations by the Executive Branch in 2007. Among other things, the Governor's Office recommended modifying the expungement statute "to promote employability" of rehabilitated ex-offenders, including "allowing first offenders to seek expungement in a wider variety of cases" and "reducing the time frame requirements for compelling cases." *See A Strategy for Safe Streets and Neighborhoods, Executive Summary,* issued by Gov. Jon S. Corzine (2007), at 24, http://www.nj.gov/oag/crimeplan/safe-exec-summ-complete.pdf (*Safe Streets Strategy*); *see also* S. 3061 (Sponsors' Statement), 213th Leg. 7 (N.J. Nov. 23, 2009) (noting that proposed change to expungement statute embodied recommendations of *Safe Streets Strategy*); A. 1771 (Sponsors' Statement), 213th Leg. 8 (N.J. Jan. 8, 2008) (same).

The revised law includes a number of changes. First, the law now allows for expungement of certain cases after five years, if expungement is in the public interest. In addition to the presumptive ten-year time limit for applications in *N.J.S.A.* 2C:52–2(a), courts may now grant expungement when

at least five years has expired from the date of [ ] conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later; the person has not been convicted of a crime, disorderly persons offense, or petty disorderly persons offense since the time of the conviction; and the court finds in its discretion that expungement is in the public interest, giving due consideration to the nature of the offense, and the applicant's character and conduct since conviction.

[*N.J.S.A.* 2C:52–2 (a)(2).]

In essence, expungement under the new "public-interest" prong initially requires three things: the passage of five years; no additional convictions; and a finding that expungement is in the public interest.

Second, in addition to allowing for expungement of convictions that involve small quantities of marijuana and hashish under *N.J.S.A.* 2C:52–2(c)(1) and (2), the amendment identified a third category of crimes that may be expunged:

Any controlled dangerous substance [conviction] provided that the conviction is of the third or fourth degree, where the court finds that expungement is consistent

with the public interest, giving due consideration to the nature of the offense and the petitioner's character and conduct since conviction.
[*N.J.S.A.* 2C:52–2 (c)(3).]

Third, because of the preceding change, the Legislature modified the grounds for denial of relief. The revised law now states that "in regard to expungement sought for third or fourth degree drug offenses pursuant to [*N.J.S.A.* 2C:52–2(c)(3)], the court shall consider whether" the need for the availability of records outweighs the desirability of expungement, "regardless of whether any party objects on this basis." *N.J.S.A.* 2C:52–14 (b).

### E.

We briefly address which party bears the burden of proof for the revised parts of the statute—the new objective elements and the public-interest finding.

■ We conclude that petitioner must establish the objective elements of the new avenues for expungement—the passage of five years, without an additional conviction, after commission of an offense that may be a third- or fourth-degree CDS violation. As discussed above, settled case law placed the responsibility to prove the objective elements of the original version of section 2(a) on the applicant, and the Legislature made no changes in that regard. *See In re D.H., supra,* 204 *N.J.* at 18, 6 *A.*3d 421 (citations omitted); *In re LoBasso, supra,* 423 *N.J.Super.* at 488, 33 *A.*3d 540 (citations omitted); *see also Coyle v. Bd. of Chosen Freeholders,* 170 *N.J.* 260, 267, 787 *A.*2d 881 (2002) (citation omitted) ("There is a long-standing canon of statutory construction that presumes that the Legislature is knowledgeable regarding the judicial interpretation of its enactments."). As a result, there is no reason to modify the existing approach that requires applicants to satisfy the statute's objective criteria.

■ The new statute requires one additional finding: "that expungement is in the public interest." *N.J.S.A.* 2C:52–2(a)(2). To make that determination, courts are to consider and balance the "nature of the offense" and the "applicant's character and conduct

since conviction." *Ibid.* For a number of reasons, we conclude that the applicant must bear the burden of proof on that factor as well. To begin with, the petitioner is uniquely qualified to demonstrate facts about his or her character and recent conduct. That burden could not fairly be placed on the State initially. In addition, a finding that expungement is in the public interest furthers the applicant's cause. Under *N.J.S.A.* 2C:1-13(d)(1), the burden of proof for a finding of fact that is not an element of an offense falls on the side "whose interest or contention will be furthered if the finding should be made." Because the expungement law does not provide otherwise, the Code's default provision applies, and applicants must therefore demonstrate that expungement is in the public interest, by a preponderance of the evidence. *See In re D.H., supra,* 204 *N.J.* at 18, 6 *A.*3d 421 (citations omitted); *In re LoBasso, supra,* 423 *N.J.Super.* at 488, 33 *A.*3d 540 (citations omitted). The same reasoning extends to the identical finding courts must make for certain CDS offenses under section 2(c)(3).

As before, the State may still object to expungement based on various grounds listed in section 14—for example, if the records are the subject of ongoing civil litigation. The burden of proof still shifts to the State under those circumstances. *See In re D.H., supra,* 204 *N.J.* at 18, 6 *A.*3d 421 (citing *In re G.R., supra,* 395 *N.J.Super.* at 431, 929 *A.*2d 602); *XYZ Corp., supra,* 119 *N.J.* at 422-24, 575 *A.*2d 423; *In re LoBasso, supra,* 423 *N.J.Super.* at 489, 33 *A.*3d 540 (citation omitted). That includes matters brought under section 2(a)(2) only—the five-year pathway to expungement—in which the State contends that records must remain available per section 14(b).

The new amendments, though, affect the burden of proof relating to section 14(b) for applicants who seek to expunge third- and fourth-degree CDS offenses under section 2(c)(3). As to those offenses, courts must now consider on their own whether the need for available records outweighs the benefits of expungement. *See N.J.S.A.* 2C:52-14(b). As a result, that factor is yet one more

element that a petitioner must satisfy to obtain expungement. The burden of proof on that point thus rests on the petitioner. We recognize that many of the factors petitioners will present on the public-interest prong will apply to the analysis under section 14(b) as well.

In the end, applicants must satisfy the balancing test the Legislature outlined to establish that expungement is in the public interest—no more and no less. Petitioners are not required to demonstrate that they are "exceptional" or "extraordinary" applicants. *See In re LoBasso, supra,* 423 *N.J.Super.* at 496, 33 *A.*3d 540.

## IV.

We now address the factors a court may consider to assess whether expungement is in the public interest. The statute lists three things: the nature of the offense, and the applicant's character and conduct since conviction. *N.J.S.A.* 2C:52–2(a)(2) & (c)(3). We draw on a thoughtful, recent Appellate Division opinion by Judge Ostrer, which explores those factors, as we examine each in turn. *See In re LoBasso, supra,* 423 *N.J.Super.* at 491–95, 33 *A.*3d 540.

 The "nature of the offense" encompasses undisputed or proven facts about the crime and its commission. That certainly includes basic information about the definition, grade, and elements of an offense. *Id.* at 494, 33 *A.*3d 540. We note that the statute uses the terms "nature" and "circumstances" of the offense in different places, *compare N.J.S.A.* 2C:52–2(a)(2) *with N.J.S.A.* 2C:52–2(a) (fourth paragraph), yet the Legislature also placed broad discretion in trial judges to decide the public-interest prong, *see N.J.S.A.* 2C:52–2(a)(2). In that context, we do not read the term "nature" of the offense in section 2(a)(2) as a limitation on a judge's inquiry. *See N.J.S.A.* 1:1–1 (noting that statutory "words and phrases shall be read and construed with their context"). To fulfill their obligation under the statute, therefore, judges may also consider details about what the petitioner did, how and with whom

he acted, and the harm he may have caused in connection with the offense of conviction.

■ Similarly, to decide the overarching public-interest question, courts may consider related charges that have been dismissed if the underlying facts have been substantiated or are undisputed. *See In re LoBasso, supra,* 423 *N.J.Super.* at 495, 33 *A.*3d 540. That information furthers the fact-specific inquiry courts must undertake. In short, courts examining how the "nature of the offense" affects the public interest have wide latitude.

■ By contrast, the statute does not allow judges to reject expungement applications based on categorical or generic grounds. For example, the Legislature has identified particular offenses that are "too serious" to qualify for expungement. *See N.J.S.A.* 2C:52–2(b). Courts cannot add to the list. The Chancery Division thus properly declined to hold that convictions for domestic violence could not be expunged as a general rule. *See In re H.M.H.,* 404 *N.J.Super.* 174, 175, 179–80, 960 *A.*2d 821 (Ch.Div. 2008). Instead, the court considered the request as part of the law's balancing of interests. *Id.* at 180, 960 *A.*2d 821.[3]

For drug offenses that meet the statute's objective criteria, then, courts cannot rule out expungement because of the judge's view that the particular drug involved is serious. But judges may consider how many times petitioner distributed drugs, whether he sold them to children, whether a weapon was involved, and other relevant facts that are not in dispute or have been proven. Depending on the nature of a given plea agreement, those and other factors may be present in a single third- or fourth-degree conviction.

---

[3] Some of the same concerns apply to section 14(b), which requires that courts consider the need for the availability of records. *See, e.g., XYZ Corp., supra,* 119 *N.J.* at 424, 575 *A.*2d 423 (rejecting per se rule that State's need for records in environmental cases always outweighs corporation's interest in expungement); *In re J.N.G., supra,* 244 *N.J.Super.* at 610, 583 *A.*2d 364 (noting that State cannot simply assert that "bad crimes establish a 'need for the availability of the records' ").

The statute also directs courts to consider "the applicant's character and conduct since conviction." *N.J.S.A.* 2C:52–2(a)(2) & (c)(3). In that regard, courts may examine an applicant's performance while in jail or on probation. *See In re LoBasso, supra,* 423 *N.J.Super.* at 492, 33 *A.*3d 540 (contrasting early discharge from probation with history of probation violations). During and after that time, courts may also consider whether an applicant

> has engaged in activities that have limited the risk of re-offending, or has avoided activities that enhanced that risk [including] whether a petitioner has obtained job training or education, complied with other legal obligations (such as child support and motor vehicle fines), and maintained family and community ties that promote law-abiding behavior, as well as whether the petitioner has severed relationships with persons in the criminal milieu.
>
> [*Id.* at 491–92, 33 *A.*3d 540.]

Facts related to an arrest that did not result in conviction, or to a dismissed charge, may also offer insight into an applicant's character and conduct. *Id.* at 492, 33 *A.*3d 540. To assess the public interest, *In re LoBasso* invited courts to consider conduct before the time of conviction as well, to gauge whether the offense was aberrational or part of a "pattern of disrespect for the law or a threat to public safety." *Id.* at 495, 33 *A.*3d 540.

As to all of the above areas, courts may only consider established or undisputed facts, not unproven allegations. In that regard, the State is not limited to an applicant's admissions at a plea or sentencing hearing, or to concessions in a presentence report. If the State's argument extends beyond established facts already in the record, though, and the petitioner contests those assertions, the State must present cognizable proofs to support its position. *See State v. Merendino,* 293 *N.J.Super.* 444, 450–51, 681 *A.*2d 117 (App.Div.1996) (noting that courts may review "extraneous relevant" evidence, including lab reports of multiple sales, to assess quantity of narcotics and decide expungement motion). In the end, the trial judge must make appropriate findings, after a hearing if necessary, before the court can rely on a material fact that remains in dispute. *See In re LoBasso, supra,* 423 *N.J.Super.* at 492, 33 *A.*3d 540; *see also State v. Brooks,* 175 *N.J.* 215, 229, 814 *A.*2d 1051 (2002) (noting court may not infer guilt solely

from dismissed charge); *State v. Green*, 62 *N.J.* 547, 571, 303 *A.*2d 312 (1973) (noting sentencing court may not infer guilt from charge defendant does not admit).

■ To assist the court in its evaluation of the public-interest prong, we direct that applicants for expungement under *N.J.S.A.* 2C:52–2(a)(2) and (c)(3) include with their petition all transcripts of plea and sentencing hearings, as well as a copy of the presentence report. *See In re LoBasso, supra,* 423 *N.J.Super.* at 483 n.3, 33 *A.*3d 540.

In practice, trial judges will balance the above factors as they decide whether expungement serves the public interest in a particular case. In doing so, they weigh the risks and benefits to the public of allowing or barring expungement. *See In re Op. No. 26 of the Comm. on the Unauthorized Practice of Law,* 139 *N.J.* 323, 327, 654 *A.*2d 1344 (1995). The focus, as the statute says, is on the "public interest," which is broader than the personal desires of an applicant, although the concepts can often be intertwined.

The legislative history offers some guidance for the judge's task. It reminds us that expungement is part of an overall plan not only to protect public safety but also to promote the successful reentry of ex-offenders into the community. *See Safe Streets Strategy, supra,* at 2, 24. We examine the balancing process further in light of those aims and the facts of this case.

## V.

■ The trial court in this case found that expungement was "not consistent with the public interest." We review the court's balancing of competing factors for abuse of discretion. *See In re LoBasso, supra,* 423 *N.J.Super.* at 496, 33 *A.*3d 540. Under that standard, a reviewing court should not substitute its judgment if the trial court's ruling was within "a range of acceptable decisions." *Parish v. Parish,* 412 *N.J.Super.* 39, 73, 988 *A.*2d 1180 (App.Div.2010). However, the trial court's interpretation of the law is not entitled to special deference. *Manalapan Realty, L.P.*

*v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (citations omitted). We review legal questions de novo. *See State v. Gandhi,* 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010) (citation omitted).

 No one disputes that Kollman met the statute's basic, objective criteria: five years had passed since his conviction; he had not been convicted of any offense since; and the conviction in question is a third-degree CDS offense. *See N.J.S.A.* 2C:52–2(a)(2) & (c)(3). Kollman also presented a certification and twenty-one letters to demonstrate that expungement would be in the public interest.

The trial court assessed those materials and stated it was satisfied that Kollman's activities and recent behavior were "consistent with those of a good citizen who has benefited from the rehabilitative aspects of community supervision." The court nonetheless denied the application "[d]ue to the relatively serious nature of the offense." As the trial court explained,

> [e]cstasy is a designer drug that the Petitioner sold, on more than one occasion, purely for monetary gain. These were not sales out of financial desperation or unrelenting habit. At the time of the sales, he was gainfully employed as a manager at a water sports store. Further, it is in the public interest not to expunge the Petitioner's conviction at this time. The community has a right to be aware of the Petitioner's conviction for drug distribution. The public is not benefited by remitting the adverse consequences stemming from a publicly accessible criminal conviction. Those who would consider the Petitioner's application to work with children or adolescents have the need to know that their would-be mentor has a conviction for drug distribution. Such information is necessary for a complete picture of the Petitioner and his entire background. This information is critical for decision-makers charged with the protection of youth. As such, at least for the time being, it is not in the public's interest to expunge this conviction, despite the Petitioner's steps toward repairing his good name and reputation.

The court's explanation appears to rely on a mix of case-specific and categorical factors. To identify the seriousness of the offense, the court first focused on the type of drug Kollman sold. The Legislature, however, has determined that all third- or fourth-degree CDS offenses are eligible for expungement—including cases that involve ecstasy. The court also highlighted, in part, the general right of the community to be aware of Kollman's drug

convictions. To the extent such universal concerns are applied, they could rule out expungement in all drug cases. Instead, the weighing and balancing process in the statute must relate to the specific facts of each case.

Next, the court relied on Kollman's multiple drug sales. According to the indictment, Kollman sold ecstasy to undercover officers on three occasions. He pleaded guilty to a single count of distribution tied to one sale, and the State dismissed the remaining charges. Although the record before us does not establish that Kollman made multiple sales, he has not disputed that point.

The trial court also considered petitioner's motive at the time of the offense and his plan to work with children on community-service projects. In its exercise of discretion, the court drew negative inferences as to both items. It explained that petitioner had acted for monetary gain when he sold drugs years before, and that his offense should be known to those who might allow him to volunteer with adolescents. Kollman's employment at the time of the offense could well have been deemed a positive factor. Also, in light of Kollman's prior history of teaching boating safety and coaching wrestling, the record could have supported a more positive assessment of his desire to continue serving as a volunteer. Regardless, those two factors should have been weighed alongside the substantial evidence about petitioner's character and conduct since his conviction, which received little attention.

■ According to the evidence presented, Kollman completed probation in half the allotted time, maintained full-time employment, obtained a college degree, and volunteered in various community activities. He made a positive impression on the twenty-one individuals who wrote letters vouching for his character, personal growth, and efforts on behalf of different charitable and service projects—all since his conviction. In addition, Kollman explained that his record of conviction had hampered his attempts to volunteer in certain areas. Although applicants are not required to show how a criminal record has impeded their efforts to resume a productive life, courts may consider that type of evi-

dence as they assess the public-interest prong. *See In re LoBasso, supra,* 423 *N.J.Super.* at 495, 33 *A.*3d 540.

We agree with the Appellate Division that the record shows petitioner led "an exemplary and law-abiding life" after his conviction. The evidence of his character and conduct since then weighs heavily in favor of expungement. Considering petitioner's recent history also comports with the Legislature's goals: to reward efforts at rehabilitation and facilitate reentry when appropriate, and to provide relief to certain one-time offenders who have rejected their criminal past. *See N.J.S.A.* 2C:52–32; *Safe Streets Strategy, supra,* at 2, 24.

Generic concerns aside, our balancing of the factors that remain in the record at this time suggests that expungement would be in the public interest. In an abundance of caution, we remand to the trial court to weigh the relevant factors again in light of the above principles and to evaluate petitioner's conduct since the court denied his petition in 2010.

On remand, the trial court must assess petitioner's character and conduct as of the date of its new ruling. If petitioner has committed another offense in the interim, he may no longer qualify for expungement. On the other hand, additional proof of rehabilitation would weigh further in his favor on the public-interest prong.

## VI.

For the reasons stated above, we reverse the judgment of the Appellate Division and remand to the trial court for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and Judge WEFING (temporarily assigned)—6.