**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0481-16T2

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL RECORDS OF
MICHAEL J. DEROSA.

_____

Submitted May 25, 2017 - Decided June 26, 2017

Before Judges O'Connor and Mawla.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Indictment No.
02-11-1500.

Michael J. DeRosa, appellant pro se.

Angelo J. Onofri, Mercer County Prosecutor,
attorney for respondent State of New Jersey
(Amanda E. Nini, Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Petitioner Michael J. DeRosa appeals from an October 20, 2016

order denying his application for expungement pursuant to N.J.S.A.

2C:52-2(a)(2).  We affirm.

The following facts are taken from the record.  In 2002,

petitioner worked in a group home where he was responsible for the

care of a severely disabled adult patient. The patient repeatedly wandered outside of his room. On one occasion, petitioner tied the patient's wrists above his head and to the bed, where he hung under the pull of his body weight for over twelve hours, causing severe nerve damage. The patient also suffered burns when he slipped from the bed and lay against a nearby heater, unable to move away because he remained tied. When another worker discovered the patient the next morning, petitioner denied responsibility for his actions and refused to obtain medical treatment for the patient. He also downplayed the patient's injuries as illness-related, when queried by the patient's mother.

On March 4, 2004, a Mercer County jury convicted petitioner of criminal restraint.[1] He was sentenced to six months of incarceration, followed by four years of probation, ordered to perform two hundred and fifty hours of community service and pay fines and fees totaling $1155. Petitioner served his custodial sentence, satisfied his monetary and community service obligations, and was discharged from probation early for good conduct on July 26, 2007. He subsequently relocated to Florida, where he resided with his parents and completed his undergraduate and law degrees. Petitioner was also employed while in school.

---

[1] On appeal, we reversed petitioner's conviction for endangerment.

Upon completing law school, he applied for admission to the Florida and South Carolina Bars. However, both applications were denied because of petitioner's criminal record.

As a result, petitioner filed an application on May 12, 2016, seeking to expunge his criminal record, including the following: a July 9, 2001 municipal charge for simple assault and harassment, which had been dismissed; the conviction for criminal restraint; and a February 4, 2006 arrest and guilty plea to a fighting/misbehaving municipal ordinance, incurred while on probation. After a hearing, the trial judge denied petitioner's application.

On appeal, petitioner asserts the following arguments:

> I. MISAPPLICATION/MISINTERPRETATION OF THE LAW
>
> A. THE TRIAL COURT MISINTERPRETS AND MISAPPLIES THE LAW SET FORTH IN N.J.S.A. 2C:52-26(a)(2) AND THE ACCOMPANYING GUIDELINES SET FORTH BY THE NEW JERSEY SUPREME COURT IN THE CASE IN RE KOLLMAN.
>
> B. THE TRIAL COURT ERR[ED] BY IMPROPERLY MINIMIZING, MISUSING, AND MISCHARACTERIZING THE PETITIONER'S SATISFACTORY PERFORMANCE OF COMMUNITY SERVICE AS SELF-SERVING.
>
> C. SATISFACTION OF THE KOLLMAN COURT FACTORS THAT ARE TO BE WEIGHED AND BALANCED NEED ONLY BE SATISFIED TO ORDINARY NOT AN EXCEPTIONAL LEVEL.

D. LACK OF COMMUNITY SERVICE IS NOT ONE OF THE DOMINANT KOLLMAN COURT FACTORS NOR IS IT THE BASIS FOR A DENIAL OF EXPUNGEMENT AS LISTED IN N.J.S.A. 2C:52-14. ALTERNATIVELY, PERFORMANCE OF COMMUNITY SERVICE IS ONLY A POSITIVE ENHANCING CONSIDERATION AND THE ABSENCE OF WHICH CANNOT BE VIEWED IN A NEGATIVE LIGHT OR SERVE TO NEGATE OR OVER-WHELM THE EXISTENCE OF THE DOMINANT GUIDING BALANCING FACTORS OF THE KOLLMAN COURT.

II. ABUSE OF DISCRETION AND VIOLATIONS OF DUE PROCESS.

A. THE TRIAL COURT'S RELIANCE ON ITS "SENSE" OF THE PETITIONER'S ACCOUNTABILITY IS MISGUIDED AND ITS FAILURE TO ACKNOWLEDGE AND UTILIZE SEVERAL REPORTS FASHIONED BY INDEPENDENT LICENSED PSYCHOLOGISTS WHEN FORMING THAT OPINION IS INAPPROPRIATE AND AN ABUSE OF DISCRETION.

B. THE TRIAL COURT ABUSES ITS DISCRETION IN REQUIRING AN ADMISSION OF GUILT FROM THE PETITIONER WHICH IS NOT GROUNDS FOR DENIAL OF AN EXPUNGEMENT PETITION UNDER N.J.S.A. 2C:52-14.

C. THE TRIAL COURT VIOLATED THE PETITIONER'S DUE PROCESS RIGHTS IN ALLOWING UNSUBSTANTIATED EVIDENCE NOT FOUND IN THE RECORD TO PROVIDE THE BASIS FOR ITS FACTUAL FINDINGS AND BY NOT REQUIRING THE OBJECTING PARTY TO PROVIDE A REASONABLE BASIS FOR ITS OBJECTIONS.

D. THE TRIAL COURT ERR[ED] BY FAILING TO SHIFT THE BURDEN TO THE

STATE TO PRODUCE BY THE PREPOND-
ERANCE OF THE EVIDENCE A NEED FOR
THE AVAILABILITY OF THE PETITION-
ER'S CRIMINAL RECORD.

III. LEGISLATIVE INTENT AND PUBLIC POLICY
VIOLATIONS.

A. A DIRECT COMPARISON OF THE
KOLLMAN AND PETITIONER'S CASES
UNDER THE PUBLIC INTEREST BALANCING
EVALUATION DEMONSTRATES THE TRIAL
COURT['S] CLEAR AND PLAIN ERROR IN
DENYING THE PETITIONER'S PETITION
ACCORDING TO THE LEGISLATIVE INTENT
AND AS A MATTER OF PUBLIC POLICY.

B. THE TRIAL COURT FAILED TO ADHERE
TO THE LEGISLATIVE INTENT OF THE
EXPUNGEMENT LAW UNDER N.J.S.A.
2C:52-32 TO PROVIDE RELIEF TO THE
REFORMED OFFENDER WHO HAS DISASSO-
CIATED FROM UNLAWFUL ACTIVITY.

Relevant to the issues on appeal, petitioner claims the trial judge improperly weighed the factors set forth in N.J.S.A. 2C:52-2(a)(2) and misinterpreted the Supreme Court's holding in In re Kollman, 210 N.J. 557 (2012). Following our review of the arguments presented in light of the record and applicable law, we find no abuse of discretion and affirm.

Our review of expungement determinations requires "[w]e review the [trial] court's balancing of competing factors for abuse of discretion." Id., supra, 210 N.J. at 577 (citing In re LoBasso, 423 N.J. Super. 475, 496 (App. Div. 2012)). "Under that standard, a reviewing court should not substitute its judgment if

5                                                    A-0481-16T2

the trial court's ruling was within 'a range of acceptable decisions.' However, the trial court's interpretation of the law is not entitled to special deference. We review legal questions de novo." Id. at 577-78 (citations omitted).

Pursuant to N.J.S.A. 2C:52-2(a)(2), a court may grant a petitioner expungement when:

> at least five years has expired from the date of . . . conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later; the person has not been convicted of a crime, disorderly persons offense, or petty disorderly persons offense since the time of the conviction; and the court finds in its discretion that expungement is in the public interest, giving due consideration to the nature of the offense, and the applicant's character and conduct since conviction.

"In essence, expungement under the [] 'public interest' prong initially requires three things: the passage of five years; no additional convictions; and a finding that expungement is in the public interest." Kollman, supra, 210 N.J. at 571. The applicant bears the burden of proving the factors for expungement. Id. at 572-73.

To determine whether expungement is in the public interest "courts are to consider and balance the 'nature of the offense' and the 'applicant's character and conduct since conviction.'" Ibid. "The 'nature of the offense' encompasses undisputed or

proven facts about the crime and its commission. That certainly includes basic information about the definition, grade, and elements of an offense." Id. at 574. "[T]herefore, judges may also consider details about what the petitioner did, how and with whom he acted, and the harm he may have caused in connection with the offense of conviction." Id. at 574-75. "In short, courts examining how the 'nature of the offense' affects the public interest have wide latitude." Id. at 575.

To determine an applicant's character and conduct since conviction, "courts may examine an applicant's performance while in jail or on probation." Id. at 576.

> During and after that time, courts may also consider whether an applicant
>
>> has engaged in activities that have limited the risk of re-offending, or has avoided activities that enhanced the risk [including] whether a petitioner has obtained job training or education, complied with other legal obligations (such as child support and motor vehicle fines), and maintained family and community ties that promote law-abiding behavior, as well as whether the petitioner has severed relationships with persons in the criminal milieu.
>
> Facts related to an arrest that did not result in conviction, or to a dismissed charge, may also offer insight into an applicant's character and conduct. [In re Lobasso, 423 N.J. Super. 475, 576 (2012).] To assess the

> public interest . . . courts [may] consider conduct before the time of conviction as well, to gauge whether the offense was aberrational or part of a "pattern of disrespect for the law or a threat to public safety."  [Id. at 495.]
>
> . . . .
>
> In practice, trial judges will balance the above factors as they decide whether expungement serves the public interest in a particular case.  In doing so, they weigh the risks and benefits to the public of allowing or barring expungement.  The focus, as the statute says, is on the "public interest," which is broader than the personal desires of an applicant although the concepts can often be intertwined.
>
> [Id. at 576-77 (emphasis added) (citations omitted).]

Here, because there is no dispute that petitioner met the first two statutory factors, we address his claims the trial judge abused her discretion in weighing the third public interest factor. Petitioner asserts he met the public interest factor because he volunteered for work while in prison, completed his community service at a church, overcame a learning disability to earn his undergraduate and law degrees, and cared for his ailing parents. He also argues the evidence proves he will not re-offend. Specifically, he highlights the lack of other criminal convictions, a character reference letter from his sister, a mental health evaluation he obtained for purposes of seeking an

8

accommodation to take the Florida Bar Examination, and two letters from a mental health counselor and a neuropsychologist for admission to the South Carolina Bar.

Petitioner likens his case to the facts in <u>Kollman</u> and argues the trial judge here failed to consider evidence of his good character and conduct since the conviction. Specifically, he points to his completion of two hundred and fifty hours of community service as a part of his sentence and "over 120 hours of pro bono work, while in law school, and one year of volunteer work done at the Florida State University Public Interest Law Center." Petitioner also challenges the trial judge's finding he lacked remorse and accountability for his actions, claiming the judge ignored his expressions of remorse during his testimony at the expungement hearing.

Our review of the trial judge's findings lead us to conclude she did not abuse her discretion. First, the record demonstrates the judge considered the nature of petitioner's offense and its gravity. She recited petitioner's criminal history, including his arrest and guilty plea to a municipal ordinance while on probation. She also considered and rejected petitioner's assurances he would not re-offend because he did not intend to return to the health

care field again,[2] noting there are no conditional expungements under the statute.

Second, the judge acknowledged the strides petitioner made in obtaining an education for the stated purpose to "give back." She further addressed petitioner's pro bono work during law school and the difficulties a criminal record imposes on the ability to obtain employment. However, the judge noted petitioner's education materially benefitted him and his family, not the public interest.

This finding dovetailed with the judge's finding petitioner lacked remorse. The judge traced a common theme, beginning with the presentencing report, which noted his intent to appeal the conviction. The judge interpreted this as an "air of, I'm sorry for what happened but [I am] not taking responsibility for what happened." The judge found the arguments raised in the expungement petition bore the same "air," noting petitioner continued to deflect responsibility by arguing a lack of evidence to support the conviction. The judge found this demonstrated a lack of remorse. Referring to the facts underlying his conviction for

---

[2]   We note, notwithstanding petitioner's assurance to remain out of the health care field, his intent to become an attorney at law will, by necessity, expose him to a similarly situated subset of vulnerable individuals, whether it be through pro bono service or in the representation of clientele enduring difficult circumstances.

criminal restraint, she stated: "And when you say there's no evidence for 12 hours, you don't remember that. Well it's in the Appellate Division's decision because they talk about the evidence that was presented at trial."

Having considered petitioner's claims on this record, we are unable to conclude the judge abused her discretion in weighing the statutory factors. The record supports the judge's findings petitioner's conviction was not, as the Kollman Court stated, merely "a minor brush with the criminal justice system." Kollman, supra, 210 N.J. at 568. The gravity of petitioner's offense, his disruptive conduct during probation, and his attitude demonstrate otherwise.

Lastly, the trial judge properly exercised her discretion in weighing evidence purporting to corroborate petitioner's character and conduct since his conviction. As she noted, the mental health evaluations attached in support of petitioner's expungement application do not address his conduct, insight and remorse over his past conduct. Instead, the documents address petitioner's mental health condition in connection with a separate assault he suffered, a request for clemency, and a request for a testing accommodation for the Florida and South Carolina Bar examinations. These materials are irrelevant to an evaluation of his character and conduct as they relate to his conviction. Moreover, a review

of the sentencing and expungement hearing transcripts demonstrate the gravamen of petitioner's testimony was not to express remorse to the victim and his family, but instead remorse over the impact petitioner's wrongdoing has had on himself, his family, and his future.

On the matter of character and conduct, petitioner likens his circumstances to those in <u>Kollman</u>, but we fail to see any analogy. Indeed, the <u>Kollman</u> Court noted:

> Kollman offered proof that he completed college and received a Bachelor of Science degree from the Richard Stockton College of New Jersey in May 2009. He also certified that he worked full-time while in school and had become active in various community service projects.
>
> Petitioner also submitted twenty-one letters to the court. His employer for sixteen years described him as a hard-working leader and a role model to others. The employer credited Kollman for accepting responsibility and taking steps to improve himself and deter others after his conviction. The District Director for the Boy Scouts of America praised Kollman and his family for hosting annual toy drives to help underprivileged families and teenagers with alcohol and drug abuse problems. Kollman also served on the district board of directors of a scholarship committee for scouting. Several other community groups submitted letters as well. In addition, various attorneys, friends, and family members wrote about Kollman's strong character and personal growth in recent years.
>
> In Kollman's certification, he added that he had had no trouble with the law since his

12

conviction -- not even a speeding ticket. However, he explained that because of his criminal record, he could not teach a boating and safety certificate class, as he had done previously for three to four years, could not help coach wrestling at high school, as he had done before as well, and could not accept an offer to work with the Big Brothers Big Sisters program as a volunteer.

[Id. at 564-65.]

Although we do not require every applicant seeking expungement to replicate the exact facts in Kollman, the facts here are inapposite to those in Kollman, where the petitioner's post-conviction character and conduct exuded a singular aim of service to others. Petitioner's conduct falls short of the mark, and is not outweighed by his limited pro bono employment during law school. Instead it demonstrates, as the Kollman Court stated, a motivation to serve his narrower "personal desires." The balance of petitioner's arguments are without sufficient merit to warrant a discussion in a written opinion. Rule 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0481-16T2