# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2454-19T2

IN THE MATTER OF THE
EXPUNGEMENT PETITION
OF R.B.T.

_____

Argued September 14, 2020 – Decided October 14, 2020

Before Judges Messano, Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Accusation No. 18-02-0149.

Carey J. Huff, Assistant Prosecutor, argued the cause for appellant State of New Jersey (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Carey J. Huff, of counsel and on the brief).

Charles J. Uliano argued the cause for respondent R.B.T. (Chamlin, Uliano & Walsh, attorneys; Charles J. Uliano, of counsel; Andrew T. Walsh, on the brief).

PER CURIAM

R.B.T. was a municipal court judge in nine towns in Monmouth County: Union Beach, Oceanport, Colts Neck, Tinton Falls, Rumson, Neptune City, Bradley Beach, and Eatontown. R.B.T. pled guilty to committing numerous

illegal acts on multiple occasions in his capacity as a judge. He converted all or part of municipal court defendants' suspended fines to contempt of court fines without a legal basis. He issued municipal defendants contempt of court fines for being late without confirming if they were late, nor did he give "late" defendants an opportunity to explain. Further, R.B.T. issued defendants contempt of court fines for disobeying prior court orders without confirming that such prior orders existed. He also suspended fines and converted them to contempt of court fines after defendants left court. Also, on some occasions, when R.B.T. accepted an affidavit from attorneys on behalf of their client, he would suspend the fine and convert it to contempt of court after the attorney left the room. On one occasion, he threatened a defendant who questioned a contempt assessment with jail when that defendant stated that he wanted a lawyer.

R.B.T.'s converted fines did not go to him personally, but the improper fines helped him get appointed to various municipal judgeships. R.B.T. knew that Monmouth County and the towns he served shared fine money equally from motor vehicle tickets. He also knew 100% of the contempt of court fines go to the town and are not shared with the county. Thus, by suspending mandatory

fines and converting those fines to contempt of court sanctions, R.B.T. diverted money away from Monmouth County to the towns.

As a result of his improper scheme, the towns received more than their fair share of fine revenue from fines. Thus, R.B.T. "guaranteed future appointments to the bench" by converting fines to contempt fines and securing more money for the towns than they otherwise would have received. R.B.T.'s illegal actions resulted in $1.2 million dollars of ticket-related revenue, $600,000 of which was improperly diverted to the towns.

After investigating R.B.T.'s conduct, the Monmouth County Prosecutor's Office had him arrested and charged with falsifying records. In exchange for his guilty plea, the prosecutor allowed R.B.T. to apply for Pre-Trial Intervention (PTI).[1] As part of his plea deal, R.B.T. also agreed to forfeit public office. After R.B.T. successfully completed PTI, the court dismissed the fourth-degree charge. R.B.T. then moved for an expungement of the criminal records relating

---

[1] PTI is a diversionary program where certain offenders can avoid criminal prosecution by receiving early rehabilitative services expected to deter future behavior. State v. Roseman, 221 N.J. 611, 621 (2015). The Criminal Division Manager must recommend an offender and the prosecutor must give consent for an offender to be admitted into PTI. Ibid.

to the arrest and subsequent admission into PTI six months after completion of PTI as required by statute.[2]

The State objected to the expungement petition. Judge Jill O'Malley heard oral argument and explained her reasons for ordering the expungement in a thorough written opinion.

The State presents the following arguments on appeal:

> (1) The trial court erred in determining the State was precluded from objecting to the expungement because it did not object to PTI following a guilty plea.
>
> (2) The trial court was incorrect that the investigation reports are not expunged; and
>
> (3) The State met its burden to show that the need for the records outweighed defendant's interest in relief.

Following our review of the record and the parties' briefs, we affirm the trial court's order granting expungement. However, we remand for the limited purpose of identifying which records associated with R.B.T.'s arrest and subsequent admission into the PTI Program are to be expunged, and which records, if any, are to be excluded from the expungement order.

Prosecutors enjoy wide discretion in making determinations on PTI applications under N.J.S.A. 2C:43-12. State v. Baynes, 148 N.J. 434, 443

---

[2] See 2C:52-6(c)(1).

(1997).  Courts will generally not overturn a prosecutor's decision to permit a criminal defendant's admission into PTI.  Baynes, 148 N.J. at 443-44.  Such prosecutorial discretion is afforded "enhanced deference" by our courts.  State v. Baynes, 148 N.J. 434, 443 (1997); State v. Wallace, 146 N.J. 576, 589 (1996); State v. Nwobu, 139 N.J. 236, 246 (1995) (citing State v. Kraft, 265 N.J. Super. 106, 111-12 (1993)); see also State v. DeMarco, 107 N.J. 562 (1987).

N.J.S.A. 2C:52-6(a) sets forth the criteria for expungement of arrest records not resulting in conviction, including under circumstances where a person has successfully completed PTI and the original charge has been dismissed.  The relevant section of the statute reads as follows:

> a. When a person has been arrested or held to answer for a crime . . . under the laws of this State or of any governmental entity thereof and proceedings against the person were dismissed, the person was acquitted, or the person was discharged without a conviction or finding of guilt, the Superior Court shall, at the time of dismissal, acquittal, or discharge, or, in any case set forth in paragraph (1) of this subsection, order the expungement of all records and information relating to the arrest.

[N.J.S.A. 2C:52-6(a)]

After being admitted into and successfully completing a supervisory program, an applicant must wait six months after the entry of the order of dismissal to apply for expungement.  N.J.S.A. 2C:52-6(c)(1).  Upon completion

A-2454-19T2

of this waiting period the applicant is presumptively entitled to expungement. In re Kollman, 210 N.J. 557, 570 (2012) (citing In re Expungement Petition of D.H., 204 N.J. 7, 18 (2010)).

We consider de novo the trial court's interpretation of the expungement statute. Kollman, 210 N.J. at 577-78 (2012) (applying de novo standard of review to questions of interpretation of the statute governing expungement of criminal records); In re Expungement of the Criminal Records of R.Z., 429 N.J. Super. 295, 300 (App. Div. 2013). However, we are obliged to give deference to the factual findings of the trial court. See, e.g., In re Civil Commitment of R.F., 217 N.J. 152, 174-75 (2014).

The initial burden of proof for an expungement is on the applicant. In re D.H., 204 N.J. at 18. The applicant "has the burden to satisfy the requirements of the expungement statute by a preponderance of the evidence." Ibid. Once the applicant has satisfied the requirements of the expungement statute, they are presumptively entitled to expungement and the burden then shifts to the State. Kollman, 210 N.J. at 570. "To meet its burden, the State ha[s] to demonstrate some cause for denial by a preponderance of the evidence." Ibid.

The Legislature has established multiple grounds for denial of a petition of expungement. N.J.S.A. 2C:52-14, provides, in relevant part:

A petition for expungement filed pursuant to this chapter shall be denied when:

> b. The need for the availability of the records outweighs the desirability of having a person freed from any disabilities as otherwise provided in this chapter. An application may be denied under this subsection only following objection of a party given notice pursuant to N.J.S.2C:52-10 and the burden of asserting such grounds shall be on the objector.

Ibid.

The grounds for grant or denial of expungement set forth in the statute require proofs.  Thus, we must defer to a trial court's factfinding with respect to whether petitioner met his burden, establishing a case for expungement, and whether the State met its burden in opposing the application. Kollman, 210 N.J. 557, 577-79 (applying abuse of discretion standard of review to public interest determination for criminal expungements after five years); see also In re Appeal of the Denial of the Application of Z.L., 440 N.J. Super. 351, 355-56 (App. Div. 2015) (applying deferential standard of review to trial court denial of firearms purchaser identification card (FPIC) because "issuance would not be in the interest of the public health, safety or welfare" under N.J.S.A. 2C:58-3(c)(5) (internal quotation marks and citation omitted)).

A judicial determination that expungement should be granted does not, however, end the inquiry. See In re D.H., 204 N.J. at 21. The next question is, what happens to the various records related to the expunged charge? Under N.J.S.A. 2C:52-1, expungement is defined as "the extraction, sealing, impounding, or isolation of all records on file." N.J.S.A. 2C:52-1(a). When the court orders an expungement, records are extracted and isolated, but not destroyed. Kollman, 210 N.J. at 568. Expunged records shall include complaints, warrants, arrests, commitments, processing records, fingerprints, photographs, index cards, "rap sheets," judicial dockets and related items. N.J.S.A. 2C:52-1; Kollman, 210 N.J. 557, 568-69.

The Supreme Court in In re D.H. found that the legislature "foresaw instances where expungement could be granted, but in the exercise of legislatively guided judicial discretion, something less than all of the records resulting from petitioner's arrest and conviction would be subject to the expungement order." 204 N.J. at 21.

The State's initial argument, that it was precluded by the trial judge from objecting to expungement because it consented to PTI, misreads the trial judge's well written opinion. Prosecutors enjoy wide discretion on PTI admissions, and the trial judge noted that the State did not object to this PTI application. The State's authority to consent to an applicant's admission into PTI and pave the

way for later dismissal of the charges is given enhanced deference by our courts. Baynes, 148 N.J. at 443-44. A thorough review of Judge O'Malley's opinion reveals no language barring the State from objecting to expungement. The judge simply noted that the State elected to exercise its prosecutorial discretion and consent to R.B.T.'s entry into PTI.[3] Having done so, the State is charged with understanding that a presumption exists in favor of expungement where there has been dismissal of criminal charges. See Kollman, 210 N.J. at 570. The trial judge found that R.B.T. met his initial burden on expungement. The judge then gave the State full and fair opportunity to oppose expungement. We see nothing in the record to suggest otherwise.

Once R.B.T. met his burden of proof on expungement, the burden shifted to the State to overcome the presumption in favor of expungement by a preponderance of the evidence. The State did not do so; consequently, point three of its argument on appeal fails. The State's opposition to the expungement was primarily grounded in N.J.S.A. 2C:52-14(b). It argued that public

---

[3] Judge O'Malley wrote: " [I]f the State was concerned with preserving Petitioner's matter for posterity than(sic) it should not have offered or granted admission into PTI in the first place. By doing so, the State all but guaranteed expungement under N.J.S.A. 2C:52-6(a), which was in place at the time PTI was offered to Petitioner. The State cannot cry foul on a situation of their own doing."

availability of the records associated with R.B.T.'s criminal case "would help clarify" individual municipal court cases "mishandled" by R.B.T. It further argued that this interest outweighed the desirability of having R.B.T. freed from the disabilities of having a criminal record. The trial judge rejected the 2C:52-14(b) argument, noting that the State offered no specific evidence of any ongoing litigation or investigation regarding the municipal court cases affected by R.B.T.'s illegal acts. Finally, the State argued that the public "has a right to know" how the justice system handled R.B.T.'s crimes.

The court did not find the public interest "right to know" argument persuasive, noting that the wide media coverage of R.B.T.'s arrest and court appearances and the digital public record attached to R.B.T.'s name would satisfy the public's "right to know". We will not substitute our judgement for the trial court's if the ruling was within a range of acceptable decisions. Kollman, 210 N.J. at 577.

"The question of whether expungement should be granted is different in both form and substance from the separate but related question as to the reach of any resulting order of expungement." In re D.H., 204 N.J. at 20-21. Although the trial court stated that "the underlying reports or evidence secured during the investigation "were not sought to be expunged," presumably by R.B.T., it is

10

unclear precisely what reports or evidence are being referred to on the record presented. When a court grants expungement, there can be circumstances where less than all records should be extracted, sealed, isolated, or impounded. In re D.H., 204 N.J. at 21.

We remand the matter to the judge to conduct a hearing to clarify with specificity which records will and will not be expunged. We leave the conduct of the hearing to the sound discretion of the judge. Such a hearing is consistent with the principles espoused by the Supreme Court in In re D.H.

Affirmed as to the order granting expungement. Remanded to the trial court for a hearing on what records relating to R.B.T.'s case, if any, are to be exempt from the expungement order.

Affirmed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2454-19T2