247 N.J. Super. 102 (1991)
588 A.2d 875
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE JURCSEK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1991.
Decided April 2, 1991.
*104 Before Judges PETRELLA, BILDER and MUIR, Jr.
Laura M. Le Winn argued the cause for appellant.
*105 Robin Parker, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Robin Parker, of counsel and on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
Following a five week jury trial defendant George Jurcsek was convicted of conspiracy to commit theft by deception, forgery and falsifying records (count 1) and theft by deception (count 2). He was sentenced to a term of 7 years on count 1 and a concurrent term of 4 years on count 2. The State, claiming an illegal sentence, cross-appeals from the 4 year sentence imposed on count 2.
To be properly understood, a description of the acts which led to these convictions must be preceded by a short explanation of the milieu in which the defendant lived and operated. Defendant, together with varying numbers of others, at times totaling over 30, belonged to a communal group known as the Circle of Friends. Defendant Jurcsek was the founder and head of the group. Evidence presented by the State showed the group to be authoritarian and collectivist in nature. Obedience to the leader, defendant Jurcsek, was complete. All monies obtained by any member were turned over to the group.[1] Outside contacts, including with relatives, was discouraged as were personal relationships between the men and women in the group. The members were principally young and college educated.
According to the State's proofs, in 1979 defendant Jurcsek formulated a plan, known as the student loan project, to obtain monies from banks in the form of student loans. The scheme contemplated that members of the group would apply for *106 government guaranteed student loans, ostensibly intended as financial aid to attend college, but actually intended by defendant Jurcsek to be turned over to the group without any intention that the loan would be repaid or that the applicant attend school. To maximize the numbers of loans, members not only acted in their own names but enrolled in schools and applied for loans in the names of other members of the group. The fruits of the scheme, in the form of checks made out to the supposed student/applicant were cashed and the proceeds turned over to the group. Over a period from 1979 to 1983, the group obtained some $150,000, most of which had been repaid by the time of trial.
On appeal, defendant makes the following contentions:
POINT I: The Conviction And Sentence On Count One, Charging Conspiracy, Must Be Vacated And Dismissed Because The Conspiracy Conviction Merges With The Conviction On The Substantive Count Two.
POINT II: The Trial Judge Erroneously Admitted Extensive "Background" Evidence Concerning The Community's Lifestyle And Structure, To A Degree Which Unduly Prejudiced Defendant Before The Jury.
POINT III: The Trial Judge Erred In Denying Defendant's Mistrial Motions, And In Submitting The Case To The Jury, In The Wake Of Two Incidents Which Incurably Prejudiced Defendant In The Eyes Of That Jury.
A. The Two Incidents.
B. The Trial Judge's Examination Of Jurors Regarding These Two Incidents Was Inadequate.
C. The Trial Judge Erred In Denying Defendant's Motions For A Mistrial, Under These Circumstances.
POINT IV: The Manner In Which The Trial Judge Conducted Jury Voir Dire Proceedings Deprived Defendant Of His Right To Exercise Informed And Meaningful Peremptory Challenges.
POINT V: Defendant's Sentence Is Manifestly Excessive.
In its cross-appeal, the State contends:
THE TRIAL COURT IMPROPERLY ACQUITTED DEFENDANT OF SECOND-DEGREE THEFT BY DECEPTION ON COUNT TWO; THE SENTENCE ON THAT COUNT IS ILLEGAL.

I.
During the State's cross-examination of one of the group's members (called as a defense witness), a denial by the *107 witness that the Circle of Friends limited contact of its members with family and former friends evoked an audible reaction from members of the audience  presumably relatives and/or friends. Defendant unsuccessfully sought a mistrial. On appeal, he contends the noise, which the trial judge characterized as "a groan, an oh", so infected the jury as to deprive them of a fair trial. We disagree.
The trial judge acted promptly to remove any prejudice. She made inquiry of the jurors which disclosed that 14 of the 16 had heard a noise  variously described by them as a groan, moan, gasp, and "oh no". As the trial judge questioned each juror individually, she assured by her questioning and instructions that the jurors were unaffected by the outburst, understood the facts were to be decided solely on the evidence presented at the trial and were able to do so. We are satisfied the trial judge's prompt corrective action cured any prejudice and that the jury followed the instruction. See State v. Manley, 54 N.J. 259, 270, 255 A.2d 193 (1969).

II.
The following day, the judge learned from a juror that a woman in a car used by defendant Jurcsek and his attorney to come to court was taking pictures of people leaving the court-house. Inquiry of the jury disclosed that several other jurors had made similar observations.
At a chambers conference with the attorneys, the trial judge learned that the woman was a member of the Circle of Friends who believed she had seen members of the concerned families talking with jurors. Defendant Jurcsek's attorney sought a mistrial, expressing concern his presence in the car made it impossible for him to effectively represent his client. On appeal, defendant contends that this incident further tainted the jury and deprived him of a fair trial.
We disagree. The trial judge promptly gave a comprehensive curative instruction.

*108 I want you all to know that this morning I conducted an investigation myself into this matter and that we have identified the person responsible for this incident and I have also, I want you to know, determined that as a result of my investigation there was no nefarious purpose at all in the taking of these photographs and I want to assure you of that fact.
I want to also assure you that nothing like this will happen again. I am confident that it will not happen again based upon my investigation. However, to allay any reservations that you might have along these lines I have seen to it that a sheriff's officer will accompany you after court each day to your parking lot. I am not doing this because I believe that further incidents will happen, I am doing this so that your minds can be laid to rest that you know for sure that no one is going to bug you again.
Now, having said that I also want to tell you that there is absolutely no evidence at all that this incident was caused by either of the defendants or that either of the defendants even knew that this was going to happen. A defendant is entitled to have the case against him or her decided exclusively upon the evidence that is presented in this courtroom and this courtroom alone. It would be a travesty if some incident that occurred outside of the courtroom for which the defendants are not responsible would interfere in any way with the jurors' function in evaluating the evidence that's presented in this case and deciding the case exclusively upon the evidence that's presented.[2]
This was followed by an inquiry as to whether any member of the jury felt his or her ability to decide the case solely on the evidence presented was impaired by the incident, to which there were no responses.

III.
Defendant's remaining contentions as to his convictions are clearly without merit. R. 2:11-3(e)(2). The background evidence as to the Circle of Friends was necessary to an understanding of the evidence presented with respect to the student loan project. The trial judge properly explained on the record:
It's not a collateral issue at all whether or not these persons were acting independently, what influences they were subjected to, what was the scope of that influence, and what was the effect of the influence upon their conduct. In addition to the issue of the independence and the control that the defendants allegedly possessed over these witnesses, information relating to the nature of the relationship between these defendants and the persons who are going to be *109 testifying here is also relevant to the state of mind of these defendants, and also any knowledge they had about what was going on within the group.
Moreover, in her charge to the jury, the trial judge instructed it.
Conflicting evidence was presented regarding life within the Circle of Friends. It may be that evidence you choose to accept describes a lifestyle different from your own or what you would choose for members of your family. The mere fact that someone has chosen to live differently is, of course, not evidence of guilt.
The First Amendment to the Constitution grants us all freedom of association as well as freedom of speech. It would be a violation of your sworn duty to permit the fact that a defendant lives differently to influence your analysis of the evidence.
This does not mean that you must disregard such evidence entirely, however. Each of the offenses charged in the indictment consists, as I've told you, of essential elements which the State must prove beyond a reasonable doubt to obtain a conviction.
If you find that facts regarding the community life shared by the defendants and some of the witnesses tend to prove or disprove an essential element of one of the offenses charged, you may consider such facts you find to have been proven and such reasonable inferences as you may draw in determining whether the State has proven the existence of an element of the offense.
We are satisfied the trial judge's ruling was correct and that her instruction insured the evidence would not be misused. More importantly, we are satisfied that the judge, by her close supervision of the trial and proper (and, when necessary, prompt) instructions to the jury insured that defendant received a fair trial.
We are also satisfied that the manner in which the trial judge conducted the voir dire was not an abuse of discretion and that it fully vindicated defendant's right to an impartial jury. See State v. Murray, 240 N.J. Super. 378, 392-393, 573 A.2d 488 (App.Div. 1990).

The Sentences

I.
Defendant contends that the conspiracy for which he was convicted did not have a criminal objective beyond the thefts charged in count 2 and, therefore, should have been *110 merged into that substantive offense. See State v. Hardison, 99 N.J. 379, 386-387, 492 A.2d 1009 (1985). We agree. Although the conspiracy count, count 1, charged conspiracy to commit forgery and falsify records as well as conspiracy to commit theft, it is clear that the former acts were not part of an independent scheme but an integral part of the theft. Ibid.; also State v. Streater, 233 N.J. Super. 537, 544, 559 A.2d 473 (App.Div. 1989).

II.
The thefts charged in count 2 encompassed a period from 1979 to 1983. Prior to trial, defendant unsuccessfully sought to dismiss the charges as barred by the statute of limitations. The motion judge held that N.J.S.A. 2C:20-2b(4), which allows aggregation of amounts for the purpose of determining the grade of a theft offense, together with the statute of limitations provision of the Code, showed a legislative intention to treat thefts by deception of the nature here involved as continuing offenses and that the statute of limitations would therefore run from the time of the last theft committed as part of the common scheme. See State v. Tyson, 200 N.J. Super. 137, 150, 490 A.2d 386 (Law Div. 1984), cited with approval in State v. Childs, 242 N.J. Super. 121, 134, 576 A.2d 42 (App.Div. 1990). We agree.
The trial judge disagreed with the motion judge and failed to fully aggregate the amounts taken by defendant in the student loan project. She accordingly treated count 2 as a third-degree offense and sentenced defendant to a term of four years. In doing so, she erred and imposed an illegal sentence. This will require that defendant be resentenced. Since defendant has not begun serving his sentences, the imposition of an appropriate term for a second-degree offense will not raise any double jeopardy questions. See State v. McMeekin, 204 N.J. *111 Super. 496, 506, 499 A.2d 515 (App.Div. 1985); also State v. Roth, 95 N.J. 334, 360, 471 A.2d 370 (1984).[3]
The need to remand the matter for resentencing makes moot defendant's remaining contention that the sentences imposed were excessive.
The convictions are affirmed. Count 1 is merged into count 2. The matter is remanded for resentencing on count 2 as a second-degree offense and correction of the judgment of conviction.
NOTES
[1] Members of the group worked at outside jobs, turned in their pay checks and received room and board together with weekly allowances of perhaps $5 to $10.
[2] Defendant was tried with a codefendant whose appeal has been withdrawn.
[3] We need not consider defendant's argument as to whether the cross-appeal was timely filed because we have the power to correct the illegal sentence sua sponte. See State v. Paladino, 203 N.J. Super. 537, 549, 497 A.2d 562 (App.Div. 1985).