58 A.3d 1178

## IN THE MATTER OF THE EXPUNGEMENT
## OF THE CRIMINAL RECORDS OF R.Z.

Superior Court of New Jersey
Appellate Division

Argued November 27, 2012—Decided January 28, 2013.

Before Judges MESSANO, OSTRER and KENNEDY.[1]

*Ian D. Brater,* Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (*Christopher J. Gramiccioni,* Acting Monmouth County Prosecutor, attorney; *Mr. Brater,* of counsel and on the brief).

*Daniel G. Giaquinto* argued the cause for respondent (*Kern Augustine Conroy & Schoppmann, P.C.,* attorneys; *Mr. Giaquinto,* of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

The State appeals from the trial court's April 2, 2012 order expunging R.Z.'s April 30, 1999 judgment of conviction for second-degree theft by deception, *N.J.S.A.* 2C:20-4, and second-degree

---

[1] Judge Kennedy did not participate in oral argument. However, with the consent of counsel he has joined this opinion. *R.* 2:13-2(b).

financial facilitation of criminal activity, known commonly as money laundering. *N.J.S.A.* 2C:21–25. The State argues the court erred because *N.J.S.A.* 2C:52–2(a) precludes expungement if the petitioner has been "convicted of any prior or subsequent crime," and R.Z.'s theft preceded the separate money laundering offense. Petitioner argues the two offenses should be treated as a single crime because they occurred close in time, and involved a single scheme, victim, and judgment of conviction. Because we determine petitioner failed to meet his burden to prove he committed his crimes concurrently, and not on "separate occasions," *In re Ross,* 400 *N.J.Super.* 117, 122, 946 *A.2d* 86 (App.Div.2008), we reverse and remand for proceedings consistent with this opinion.

## I.

R.Z. and several other individuals and corporations were indicted by a State Grand Jury in September 1997 and charged with various crimes involving the Medicaid program. On December 23, 1998, R.Z. entered a plea to two counts of the indictment as part of an agreement in which the State promised to recommend concurrent sentences of six years, a fine of $5,000 on each count, and restitution of $50,500.

Defendant pled guilty to count fifteen, which charged that he committed theft "between on or about August 26, 1995 and ... December 22, 1995" in Paterson, Manalapan Township and elsewhere. Specifically, it was charged he

did obtain Medical Assistance payments under the New Jersey Medical Assistance and Health Services Act, (*N.J.S.A.* 30:4D–1 *et seq.*), in an amount in excess of $75,000, by submitting claims which created or reinforced the false impression that certain laboratory tests ... had been ordered by a physician and were performed on blood supplied by the Medicaid recipient who was the subject of the claim:

WHEREAS, in truth and fact, as ... [R.Z.] well knew, the laboratory tests ... had not been ordered by a physician and were not performed on blood supplied by the Medicaid recipient who was the subject of the claim, contrary to the provisions of *N.J.S.A.* 2C:20–4, *N.J.S.A.* 2C:2–6, *N.J.S.A.* 2C:2–7, *N.J.S.A.* 2C:5–1[.]

Defendant also pled guilty to count sixteen, which charged he committed money laundering during a narrower time frame, "between on or about September 6, 1995 and ... December 16, 1995,"

in Manalapan Township and elsewhere. Specifically, the indictment charged defendant

did commit the offense of financial facilitation of criminal activity (money laundering), in that [he] did engage in transactions involving property known to be derived from criminal activity, as set forth in Counts Thirteen, Fourteen and Fifteen of this indictment, ... knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the property derived from criminal activity, that is Mohammad Javid, United Diagnostics Laboratories, Inc., and United Clinical Laboratory, Inc. did make payments to Astro Supply Company and Arshad Khan in the approximate amounts of $761,834.76 and $39,876.00, respectively, and did so in a manner designed to conceal or disguise the nature, location, source, ownership or control of the money because neither [R.Z.] nor Arshad Khan, t/a Astro Supply Company, supplied any goods or performed any services to warrant said payments, contrary to the provisions of *N.J.S.A.* 2C:21–25b, *N.J.S.A.* 2C:2–6, and *N.J.S.A.* 2C:2–7[.]

In his allocution, defendant admitted that he was a manager of medical offices in Paterson for co-defendants Mohammad Javid and Arshad Khan. He stated he oversaw lab work sent to United Diagnostic Laboratories (United Diagnostic), a corporate defendant, and would bill Medicaid. He responded affirmatively when asked if he were aware "that forms or paper work that were being submitted to the lab were fraudulent[.]"

He explained, "Well, the lab—there used to be a patient—the Medicaid ID numbers. And they were just put on the lab forms. And blood was drawn either from patients or came from people that would sell blood and be submitted to United Diagnostics Laboratory." When asked what compensation he received "for working at the clinics," defendant stated he received two checks, "[t]he amount of 50,500, approximately, October of '95. And I used that to purchase a car."

Specifically regarding the money laundering count, he agreed he received the two checks totaling $50,500 from United Clinical Laboratory (United Clinical). United Clinical was also a corporate defendant distinct from United Diagnostics. He agreed the checks were drawn by Javid to a blank payee, and petitioner used them to purchase a Toyota Land Cruiser from Parkway Toyota. He agreed that he "knew that those two checks represented money that was fraudulently obtained from the Medicaid pro-

gram." He also agreed that "in addition to that [the $50,500 transaction], whether [he] received anything extra or not, [he] participated with Mr. Khan and Mr. Javid in laundering money; that is, attempting to hide the location of the money that was taken from the Medicaid program through other various means."

At petitioner's sentencing on April 30, 1999, the prosecutor asserted that petitioner and Khan, who was a fugitive, had received over $730,000 in kickbacks over three months from Javid. The prosecutor described petitioner as "one of the spokes of the conspiracy. He wasn't the hub, but within his spoke he was clearly one of the central players."

As noted, petitioner did not expressly admit in his allocution the total magnitude of the fraud, nor its time period, other than to state he received the $50,500 in checks in October 1995.[2] Defense counsel, in arguing for a five-year period of incarceration, asserted petitioner was the "most insignificant player of everyone in this situation," and asserted "[t]he evidence that was produced by the Prosecution in this case shows at best he received payment for a vehicle[.]" He also asserted that petitioner provided early and meaningful assistance to State and federal investigators.

The court imposed a sentence in accord with the plea agreement: concurrent six-year terms on each count, fines of $5,000 for each count, and an order to pay restitution of $50,500 to the State. On the State's motion, the court dismissed the remaining three counts against defendant, charging second degree conspiracy, *N.J.S.A.* 2C:5–2 (count one); and third degree Medicaid fraud, *N.J.S.A.* 30:4D–17(c), *N.J.S.A.* 2C:2–6, –7 (counts thirteen and fourteen). Defendant began serving his term of incarceration immediately, was released to the Intensive Supervision Program

---

[2] During the sentencing hearing, reference was made to a hearing on a prior motion to suppress evidence of petitioner, and a co-defendant's trial. The record does not include transcripts of that hearing or trial. Although reference is also made to the State's sentencing memorandum, and a probation report, neither those documents nor the presentence report are before us.

(ISP) on April 26, 2000, and discharged from ISP on October 17, 2001.

On September 28, 2011, R.Z. filed a verified petition for expungement.[3] The Monmouth County Prosecutor filed an objection to the petition.[4]

After oral argument, the court granted the petition, and entered an order expunging the records of the convictions and the dismissed charges. In a written decision, the court rejected the State's argument that petitioner was convicted of a "prior or subsequent crime," *N.J.S.A.* 2C:52-2(a), and that pursuant to the statute and *Ross, supra,* petitioner was barred from obtaining expungement. The court held petitioner's two crimes were part of "an ongoing criminal scheme," noting the time frame, September 6 to December 16, 1995, alleged in the indictment for the money laundering offense, was "subsumed" within the alleged range for the theft, of August 26 to December 22, 1995.

The State appeals and renews its argument that expungement is barred by the statute and *Ross.*

## II.

■ The appeal requires us to consider the meaning of *N.J.S.A.* 2C:52-2(a), which permits expungement of an indictable conviction only if the petitioner "has not been convicted of any prior or subsequent crime[.]" We must also determine who bears the burden to prove the absence of a prior or subsequent crime. Those are legal issues we consider de novo. *Manalapan Realty, L.P. v. Manalapan Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

---

[3] Neither party has provided the court with a copy of the petition. The State does not contest the expungement petition was timely filed pursuant to *N.J.S.A.* 2C:52-2(a), which provides for expungement "after the expiration of a period of 10 years from the date of . . . conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, which ever is later[.]"

[4] The objection is not before us.

We construed the statute in *Ross*. In determining whether petitioner has been convicted of a "prior or subsequent crime," we held a court must look to the date the crimes were committed, as opposed to the date of plea or conviction. *Ross, supra,* 400 *N.J.Super.* at 121, 946 *A.*2d 86. Viewing the statutory language as clear and unambiguous, we held, "if two crimes are committed on separate occasions, they are precluded from expungement regardless of whether the two crimes carry a single sentencing date and therefore a single date of conviction." *Id.* at 122, 946 *A.*2d 86.

We compared the current statute with its predecessor, which barred expungement of a "subsequent conviction," as opposed to a "subsequent crime," and concluded the Legislature intended to narrow eligibility for expungement. *Ibid.* (comparing *N.J.S.A.* 2C:52–2 with *N.J.S.A.* 2A:164–28 (repealed 1978)). We observed the current law precluded the result we reached under the prior law in *In re Fontana,* 146 *N.J.Super.* 264, 369 *A.*2d 935 (App.Div. 1976), where we permitted expungement of numerous burglaries and thefts committed over a one-week period charged in separate indictments, because the defendant was convicted and sentenced on a single date. *Ross, supra,* 400 *N.J.Super.* at 123, 946 *A.*2d 86. We affirmed the trial court's order denying expungement of Ross's bribery conviction because he committed the bribery sometime between April 20, 1989 and February 28, 1990, and he committed the crime of false swearing—involving a denial of facts related to the bribery—on May 22, 1990. *Id.* at 120, 124–25, 946 *A.*2d 86.

The question before us is whether petitioner's crimes occurred on "separate occasions." *Id.* at 122, 946 *A.*2d 86. The State argues that *N.J.S.A.* 2C:1–6c, which defines when a crime is committed for statute of limitations purposes, should guide us in fixing the date of crimes for expungement purposes. We are unconvinced. *N.J.S.A.* 2C:1–6c provides that an offense involving a course of conduct is deemed to have been committed when the conduct is terminated. *See also State v. Diorio,* 422 *N.J.Super.* 445, 458–59, 29 *A.*3d 347 (App.Div.2011) (stating that a money

laundering offense is deemed committed for statute of limitations purposes when the course of conduct has terminated), *certif. granted,* 210 *N.J.* 217, 42 *A.*3d 889 (2012); *State v. Jurcsek,* 247 *N.J.Super.* 102, 110, 588 *A.*2d 875 (App.Div.) (stating that a theft by deception involving continuing offenses and aggregated amounts for grading purposes is deemed to occur for statute of limitations purposes at the time of the last theft), *certif. denied,* 126 *N.J.* 333, 598 *A.*2d 891 (1991).

Given its purpose to define when the limitations period commences, *N.J.S.A.* 2C:1–6c addresses when the commission of a crime is complete, as opposed to when it began. However, the commencement of a criminal act is relevant to the expungement decision. If a continuous theft began a month before a continuous money laundering, but both courses of conduct terminated on the same date, the crimes would be deemed simultaneous for limitations purposes under *N.J.S.A.* 2C:1–6c, but the theft would have preceded the money laundering for expungement purposes. We reach that conclusion based on the express purpose of the expungement statute to offer relief to one-time offenders. *In re Kollman,* 210 *N.J.* 557, 562, 46 *A.*3d 1247 (2012); *N.J.S.A.* 2C:52–32. A person is not a one-time offender if he embarks on a course of theft on one date, and then a month later decides to engage in another course of criminal conduct, to hide the fruits of his prior (as well as continuing) thefts, and then concludes all activity simultaneously.

■■■■ Also critical to our analysis is allocation of the burden of proof. We conclude a petitioner bears the burden to show his or her crimes were committed concurrently, that is, that one crime was not committed "prior or subsequent[ly]" to the other. *N.J.S.A.* 2C:52–2(a). Our burden allocation decision is based on the broad principle that a petitioner bears the burden to establish pre-conditions to expungement. "In general, to support a petition for expungement, '[a] petitioner has the burden to satisfy the requirements of the expungement statute[,]' by a preponderance

of the evidence." *In re D.H.*, 204 *N.J.* 7, 18, 6 *A.*3d 421 (2010) (citation omitted).

■ Once a petitioner satisfies his or her initial burden, "the burden then shifts to the State to 'demonstrate [ ] by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted.'" *Ibid.* (quoting *In re G.R.*, 395. *N.J.Super.* 428, 431, 929 *A.*2d 602 (App.Div.), *certif. denied*, 193 *N.J.* 275, 937 *A.*2d 977 (2007)). *See also N.J.S.A.* 2C:52–24 (stating "it shall be the obligation of the county prosecutor ... to bring to the court's attention any facts which may be a bar to ... such relief").

We deem the fact that a petitioner's multiple crimes were committed concurrently to be a threshold requirement of expungement, which the petitioner therefore bears the burden to prove. The statute requires proof that there is no prior or subsequent crime as a pre-condition to filing an expungement petition:

> In all cases, except as herein provided, wherein a person has been convicted of a crime under the laws of this State and *who has not been convicted of any prior or subsequent crime* ... *may*, after the expiration of a period of 10 years from the date of his conviction, payment of fine, satisfactory completion of probation or parole or release from incarceration, whichever is later, *present a duly verified petition* as provided in section 2C:52–7 . . praying that such conviction .. be expunged.
>
> [*N.J.S.A.* 2C:52–2(a) (emphasis added).]

In the usual expungement case involving a person convicted of a single crime, a petitioner meets his or her initial burden regarding a prior or subsequent crime simply by filing a petition that satisfies *N.J.S.A.* 2C:52–7 and –8. A petition must disclose all offenses for which a defendant was convicted, *N.J.S.A.* 2C:52–7(c), and the dates of arrest and conviction. *N.J.S.A.* 2C:52–7(e). Where the petitioner has been convicted of only one crime, a conforming petition under *N.J.S.A.* 2C:52–7 would implicitly aver the absence of any prior or subsequent crime. "As a matter of practice, then, once a petition for expungement satisfies the requirements of *N.J.S.A.* 2C:52–7 (setting forth required contents of petition), and –8 (describing required statements that must

accompany petition), the burden shifts" to the State. *D.H., supra,* 204 *N.J.* at 18 6 *A.*3d 421.

However, in a case like the one before us, where a petition necessarily lists multiple offenses, the petition raises the issue whether the petitioner was eligible for filing in the first place. Compliance with sections seven and eight would not suffice to satisfy the filing pre-condition that there was no prior or subsequent crime. In such a case, the petitioner bears the burden to present prima facie proof that he or she satisfies the statutory pre-requisite.

A petitioner bears the burden to prove "the objective elements of section 2(a)." *Kollman, supra,* 210 *N.J.* at 570, 46 *A.*3d 1247. In *Kollman,* the court referred to the objective element that the requisite number of years had passed with no additional convictions. *Ibid.* The waiting periods—of ten years, or five years for early pathway expungement—run from the date of completion of a sentence, including supervision and fine payment. *N.J.S.A.* 2C:52–2(a). The prescribed contents of a petition under *N.J.S.A.* 2C:52–7 include only the date of conviction and sentence, not completion of sentence. Nonetheless, under *Kollman, supra,* the petitioner bears the burden to prove that he or she completed his or her sentence the requisite period of number years before filing. Likewise, although section seven does not expressly require the petitioner to address when multiple crimes were committed, the petitioner bears the burden to satisfy the objective element of section 2(a) that there are no prior or subsequent crimes.

Also, our conclusion finds support in the Code's default provision on burden allocation. Regarding a fact under the Criminal Code that is not an element of an offense, "unless the code otherwise provides ... [t]he burden of proving the fact is on the ... [party] whose interest or contention will be furthered if the finding should be made." *N.J.S.A.* 2C:1–13d. *See also County of Essex v. First Union Nat'l. Bank,* 373 *N.J.Super.* 543, 555, 862 *A.*2d 1168 (App.Div.2004) (stating the burden of establishing a fact is generally placed on the person relying on that fact), *aff'd in*

*part and rev'd in part on other grounds,* 186 *N.J.* 46, 891 *A.*2d 600 (2006). The petitioner bears the burden because only the lack of a conviction for a prior or subsequent crime qualifies the petitioner to seek expungement in the first instance.

Finally, our determination is consistent with the general principle that in allocating burdens of proof, we weigh heavily which party has the greater access to proofs. *See J.E. ex rel. G.E. v. State,* 131 *N.J.* 552, 569–70, 622 *A.*2d 227 (1993) (stating a party should generally bear the burden of proof if he or she has greater access to relevant information). The Court applied that principle in *Kollman,* where the Court assigned to a petitioner the burden to prove that an early pathway expungement "is in the public interest" under *N.J.S.A.* 2C:52–2(a)(2). *Kollman, supra,* 210 *N.J.* at 573, 46 *A.*3d 1247. The court assigned the burden to the petitioner in part because "the petitioner is uniquely qualified to demonstrate facts about his or her character and recent conduct," which are relevant to the public interest finding. *Ibid.* Likewise, a petitioner has access to proofs of when he or she engaged in multiple crimes, to establish a prima facie case that they were not committed on separate occasions.

Conceivably, a petitioner's detailed certification would suffice to present a prima facie case that the crimes were committed concurrently. The petitioner's prior sworn statements in a plea allocution may, if sufficiently detailed, satisfy a petitioner's initial burden. If the State disputes the petitioner's claim, it may present opposing proofs.

In deciding the "prior or subsequent crime" issue, the court in other cases may need to consider evidence outside the existing record, particularly in the case of a conviction by plea, if a petitioner's allocution did not specifically address timing. In testing a petitioner's proofs, the court may not simply rely on unproved and unadmitted allegations in an indictment. *See Kollman, supra,* 210 *N.J.* at 576, 46 *A.*3d 1247 ("courts may only consider established or undisputed facts, not unproven allegations."). The court may not infer guilt from charges a defendant

contests. *Id.* at 576–77, 46 *A.*3d 1247. *See also State v. Hupka,* 203 *N.J.* 222, 241, 1 *A.*3d 640 (2010) (stating court may not rely on disputed material in presentence report in deciding whether crime involved or touched on office warranting forfeiture of public office). However, the court may rely on facts outside the plea record if undisputed. *In re LoBasso,* 423 *N.J.Super.* 475, 497, 33 *A.*3d 540 (App.Div.2012) (stating trial court appropriately considered sworn allegation of a prior act of domestic violence, which petitioner did not dispute, in considering early pathway expungement petition).

Undisputed facts regarding the timing of an offense may be gleaned from admissions at the plea or sentencing hearing, or at trial, and concessions in a presentence report. *Kollman, supra,* 210 *N.J.* at 576, 46 *A.*3d 1247; *see also Hupka, supra,* 203 *N.J.* at 250, 1 *A.*3d 640 (Rabner, C.J., dissenting) (stating court may consider undisputed "facts ... which are embraced by a plea"). On the other hand, disputed facts must be resolved based on cognizable evidence after a hearing. *Hupka, supra,* 203 *N.J.* at 241, 1 *A.*3d 640 (stating court may resolve disputed issues in presentence report by holding a hearing); *see also id.* at 250, 1 *A.*3d 640 (Rabner, C.J., dissenting) ("To the extent there is a material dispute [regarding details of offense to which defendant pled guilty], the judge should conduct an appropriate review of the facts ... and make relevant findings after a hearing."); *In re G.R., supra,* 395 *N.J.Super.* at 433, 929 *A.*2d 602 (stating that court must look to facts outside the record if it does not disclose whether or not a conviction for distribution of narcotics under *N.J.S.A.* 2C:35–5(a)(1) involved a sale of narcotics, which may not be expunged under *N.J.S.A.* 2C:52–2(c)).

Applying these principles, we discern insufficient cognizable evidence to support the court's conclusion that petitioner committed the theft and money laundering offenses concurrently. The trial court erred in relying on the date ranges in the indictment, and concluding that one crime was not prior or subsequent to the other because the money laundering crime was "subsumed" within

the theft. First, petitioner did not admit all the allegations in the indictment,[5] and the court may not assume unproved facts. Second, if the allegations were taken as true, then the theft occurred both prior and subsequent to the money laundering, as the indictment alleged the theft began in August and ended December 22, 1995, and the money laundering began in September and ended December 16, 1995.

Neither party supplemented the record with additional proofs regarding the dates of petitioner's two crimes. As we do not have the petition, we do not know if petitioner certified, even conclusorily, the crimes were concurrent. Petitioner's allocution was insufficient to enable the court to determine whether petitioner satisfied the statutory prerequisite.

Defendant admitted that he participated in the theft by deception of monies from the State Medicaid program. He did not date his participation, but he admitted he oversaw United Diagnostic's lab work, and billed Medicaid; he knew fraudulent forms were submitted; and Medicaid ID numbers were "just put on the lab forms" in connection with blood samples from persons who "would sell blood." These admissions were sufficient to satisfy the elements of a theft from the State Medicaid program.

In response to defense counsel's question whether petitioner received compensation "for working at the clinics," petitioner responded that in October 1995, he received two checks totaling $50,500, payable in blank, which he used to purchase a vehicle. He admitted that the $50,500 "represented money that was fraudulently obtained from the Medicaid program." Therefore, we may infer the theft of at least $50,500 preceded petitioner's receipt of the $50,500, because the money first had to be procured from the Medicaid program and paid to a provider fraudulently seeking

---

[5] While the theft charge alleged an amount at issue of over $75,000, which would satisfy the element of a second-degree offense, *N.J.S.A.* 2C:20–2b(1)(a), petitioner testified only to $50,500 in value.

reimbursement, before United Clinical could draw the checks for $50,500 against those proceeds.

However, petitioner also admitted that, regardless of whether he received "anything extra or not," he assisted Khan and Javid in "attempting to hide the location of the money that was taken from the Medicaid program[.]" Given petitioner's admission of additional undated money laundering activities, he may have engaged in money laundering of proceeds of thefts in which he did not participate. Similarly, given his admission of undated false submissions to the Medicaid program, he may have participated in thefts, the proceeds of which he did not launder. Consequently, the record does not reflect when defendant's theft began and when it ended, and when his money laundering began and when it ended. It is plausible that defendant's participation in thefts and money laundering coincided with each other.

Since the trial court mistakenly relied on the face of the indictment, petitioner should have an opportunity to present proofs, if any, outside the existing record of his plea, to attempt to satisfy his burden that neither one of his two crimes was committed prior to, or subsequent to the other. The State would have an appropriate opportunity to rebut.

Reversed and remanded. We do not retain jurisdiction.