**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2478-23

THE ATLANTIC CITY
POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAL 24 and
THE ATLANTIC CITY SUPERIOR
OFFICERS' ASSOCIATION,

      Plaintiffs-Appellants,

v.

CITY OF ATLANTIC CITY,
STATE OF NEW JERSEY,
NEW JERSEY DIVISION OF
LOCAL GOVERNMENT
SERVICES IN THE DEPARTMENT
OF COMMUNITY AFFAIRS,
and JACQUELYN SUAREZ,
Director of the Division of Local
Government Services in the
Department of Community Affairs
in her official capacity,

      Defendants-Respondents.

_____

Argued on March 12, 2025 – Decided April 7, 2025

Before Judges Mayer and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2790-23.

Kevin D. Jarvis argued the cause for appellants (O'Brien, Belland & Bushinsky, LLC, attorneys; Kevin D. Jarvis and David F. Watkins, Jr., on the briefs).

Ronald L. Israel argued the cause for respondents (Chiesa Shahinian & Giantomasi, PC, attorneys; Ronald L. Israel and Melissa F. Wernick, on the brief).

PER CURIAM

Plaintiffs The Atlantic City Policemen's Benevolent Association Local 24 (PBA) and The Atlantic City Superior Officers' Association (SOA) appeal from a March 4, 2024 order dismissing with prejudice their complaint against defendants City of Atlantic City (City), State of New Jersey (State), New Jersey Division of Local Government Services (DLGS) in the Department of Community Affairs, and Jacquelyn Suarez, Director of the DLGS (Director). We affirm.

We recite the facts from the motion record and prior opinions involving the same parties and similar issues.[1] The 2008 economic recession created an unprecedented financial crisis in the City. Two years later, the City's continued financial instability resulted in the State's monitorship of the municipality. From 2010 to 2016, the City's taxable property values fell almost $14 billion. See Police, slip op. at 6. The City lost $63 million in municipal tax revenue. Ibid. Fueled by successful tax appeals by casinos, the City's debt reached nearly $500 million. Id. at 7. "Despite the sharp decline in tax revenue, the City failed to reduce the municipal budget . . . , placing the City in further economic distress." Id. at 7-8.

The City's financial situation reached a breaking point in 2016, and the mayor announced plans to shut down non-essential government services. Associated Press, Atlantic City May Shut Down Nonessential Services for 3 Weeks, N.Y. Times (Mar. 21, 2016). On May 26, 2016, in the midst of the City's

---

[1] See Atl. City Superior Officers' Ass'n v. City of Atlantic City, No. A-3117-20 (App. Div. June 30, 2022); Atl. City Policemen's Benevolent Ass'n Loc. 24 v. Christie, No. ATL-L-0554-17 (Law Div. May 23, 2017) (Police). Although Rule 1:36-3 generally prohibits citation to unpublished cases, courts may cite unpublished decisions for factual and procedural history or "to provide a full understanding of the issues presented." Zahl v. Eastland, 465 N.J. Super. 79, 86 n.1 (App. Div. 2020); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:36-3 (2025).

A-2478-23

fiscal crisis, plaintiffs and the City entered into memoranda of agreements (MOAs) for promotion of police officers with no increase in pay until the parties and the State ratified a salary increase, or salary increases were awarded by an interest arbitrator.

The Municipal Stablization and Recovery Act

The following day, on May 27, 2016, Governor Chris Christie signed the Municipal Stablization and Recovery Act (MSRA), N.J.S.A. 52:27BBBB-1 to -17, into law addressing the City's dismal financial situation. The MSRA established a procedure for determining "whether a municipality should be deemed a municipality in need of stabilization and recovery."[2] N.J.S.A. 52:27BBBB-4(a).

The MSRA authorized an appointed Director to take "any and all actions that, in the exclusive discretion of the [D]irector, may help stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery." N.J.S.A. 52:27BBBB-5(a)(3). Those actions included:

---

[2]  A municipality in need of stabilization and recovery is a municipality that, within the last five years (1) "has experienced a decrease of more than [fifty] percent in its total" property values; and (2) "has experienced an increase in outstanding debt exceeding [fifty] percent." N.J.S.A. 52:27BBBB-3.

(f) . . . unilaterally amending or terminating any contracts or agreements . . . to which the municipality is a party, provided that the [D]irector determines that the unilateral termination or amendment is reasonable and directly related to stabilizing the finances or assisting with the fiscal rehabilitation and recovery of the municipality in need of stabilization and recovery;

(g) unilaterally modifying, amending, or terminating any collective negotiations agreements, except those related to school districts, to which the municipality is a party, or unilaterally modifying, amending, or terminating the terms and conditions of employment during the term of any applicable collective negotiations agreement, or both, provided that the [D]irector determines that the modifications, amendments, or terminations are reasonable and directly related to stabilizing the finances or assisting with the fiscal rehabilitation and recovery of the municipality in need of stabilization and recovery; [and]
            . . . .

(i) with respect to any expired collective negotiations agreement to which the municipality in need of stabilization and recovery is a party, unilaterally modifying wages, hours, or any other terms and conditions of employment[.]

[Ibid.]

On June 6, 2016, the Commissioner of the Department of Community Affairs (Commissioner) designated the City a municipality in need of stabilization and recovery. Police, slip op. at 10. On November 9, 2016, the Local Finance Board vested the Director with the MSRA's powers. The MSRA

authorized the appointment of a Designee for the Director. The Designee was authorized to exercise all powers entrusted to the Director under the MSRA.

The MOAs

Plaintiffs are employed by the City as police officers. In 2013, plaintiffs executed collective negotiation agreements (CNAs) with the City through the end of 2015. The parties were unable to agree to new CNAs before January 1, 2016, but continued to negotiate. During the continued negotiations, the City recognized the need to promote police officers but lacked the financial ability to pay salary increases associated with job promotions.

The day before enactment of the MSRA, the City entered into MOAs with plaintiffs, authorizing police department promotions without concomitant raises. The PBA's MOA provided:

> [T]he City may effectuate . . . promotions . . . from Police Officer to Sergeant with no increase in pay until a salary increase, including rank [differential] and any other increase, is ratified between the City, the State Monitor, and the PBA, or until such salary increases are awarded by an interest arbitrator . . . . All increases shall be retroactive to the date of promotion.

The SOA's MOA provided:

> [T]he City may effectuate . . . promotions . . . from Sergeant to Lieutenant, and/or Lieutenant to Captain with no increase in pay until a salary increase, including rank [differential] and any other increase, is ratified

6 <span>A-2478-23</span>

between the City, the State Monitor and the SOA, or until such salary increases are awarded by an interest arbitrator . . . . All increases shall be retroactive to the date of promotion.

On June 8, 2016, two days after the State designated the City a municipality in need of stabilization and recovery, the City's governing body approved the MOAs.

The Decision in Police

In October 2016, the City ratified new CNAs with plaintiffs. Police, slip op. at 10-11. "Plaintiffs knew, and the terms of the [CNAs] indicated, that the [CNAs] were subject to approval by the [DLGS]." Id. at 12. "Ultimately, the DLGS rejected both [CNAs]." Ibid. In December, the State "informed plaintiffs that unless the parties reach[ed] an agreement [over new CNA terms], it would unilaterally impose changes on the [City's Police Department] pursuant to the [MSRA]." Ibid.

In January 2017, the Designee proposed changes to the CNAs, including "[n]ew [s]alary guides for all employees." Ibid. For the next three months, the State, the City, and plaintiffs extensively negotiated new CNA terms. Id. at 13. Negotiations ceased in March. Ibid.

On March 15, 2017, the Designee unilaterally imposed new CNA terms. Ibid. Those terms included "[n]ew salary guides for all employees, . . . . resulting in across the board salary reductions ranging from 17-29%." Ibid.

Plaintiffs filed an order to show cause (OTSC) to restrain implementation of the new CNAs and a verified complaint to enjoin the Designee from imposing the proposed changes. Id. at 23-24. The trial judge entered plaintiffs' OTSC with the requested temporary restraints pending an April 10, 2017 hearing date.

On May 23, 2017, the judge partially granted the relief requested by plaintiffs. Id. at 4-5. The judge rejected plaintiffs' constitutional challenge to the MSRA. Id. at 31-44. He denied injunctive relief related to the Designee's change in officers' salary and certain other benefits, finding plaintiffs failed to establish irreparable harm. Id. at 57. However, the judge enjoined the Designee's proposals as to reductions in force and changes to work schedules, finding injunctive relief was "appropriate to ensure public safety." Ibid. The judge memorialized his decision in a May 23, 2017 order.

The Implementation Memos

On June 7, 2017, the Designee unilaterally imposed new CNA terms by issuing two Notices of Implementation (Implementation Memos). The PBA's Implementation Memo stated:

Effective June 7, 2017, a new salary guide is hereby established for <u>all</u> current and future employees (including future promotions to rank of Sergeant). . . . The [new] salaries shall be the entire compensation for each employee. There shall be no supplemental compensation except for overtime where applicable.

The SOA's Implementation Memo similarly provided:

Effective June 7, 2017, a new salary guide is hereby established for <u>all</u> employees, (including future promotions to the rank of Lieutenant and Captain[).] The [new] salaries shall be the entire compensation for each employee. There shall be no supplemental compensation except for overtime where applicable.

Between June 8, 2016, when the City's governing body approved the MOAs, and June 7, 2017, when the Designee issued the Implementation Memos, twenty-four City police officers accepted promotions without pay raises: sixteen were promoted to Sergeant, six were promoted to Lieutenant, and two were promoted to Captain. The City never issued retroactive pay raises to those officers.

The Settlement in Police

On January 16, 2018, the parties executed a settlement agreement resolving their dispute in <u>Police</u>. The settlement agreement stipulated "[t]he salaries and steps specifically set forth in the [Implementation Memos] shall not

be altered," except "all currently employed Sergeants will be increased to a new base salary of $100,000.00 per year." The parties further agreed:

> [T]he Implementation Memo[s] . . . shall remain in full force and effect except as modified by this Settlement Agreement. All terms contained in the Implementation Memo[s] . . . shall be incorporated into the [CNAs] between [plaintiffs] including, but not limited to, that the Settlement Agreement is in effect through December 31, 2021.

Plaintiffs, the Designee, and the Director signed the settlement agreement, and plaintiffs' members subsequently ratified the settlement.

Procedural History Leading to this Appeal

On May 4, 2018, four months after resolving Police, plaintiffs sued defendants for retroactive pay raises purportedly due under the MOAs. The parties agreed to dismissal of that complaint without prejudice to allow plaintiffs to refile their claims at a future date.

On October 5, 2023, plaintiffs refiled their complaint, asserting causes of action against defendants for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, and (4) violations of the Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.14, and Wage Collection Law (WCL), N.J.S.A. 34:11-57 to -67.2.

Defendants moved to dismiss the complaint under Rule 4:6-2(e). Defendants argued (1) the MSRA permitted the State to unilaterally terminate or modify the MOAs, (2) the Implementation Memos unilaterally terminated or modified the MOAs, (3) the MOAs were subject to contingencies which never materialized, and (4) the entire controversy doctrine and res judicata barred plaintiffs' claims.

In a March 4, 2024 order, the motion judge dismissed plaintiffs' complaint with prejudice and issued an eleven-page written memorandum of decision. The judge found the "central issue . . . [was] whether the terms of the June 7, 2017 [Implementation Memos] unilaterally modified the terms of the 2016 MOAs." Relying on an unpublished case, Atlantic City Superior Officers' Association v. City of Atlantic City,[3] the judge concluded the MSRA granted the State "substantial authority" to "terminate and modify existing agreements involving municipalities in need of stabilization and recovery." The judge found the State was authorized to issue the Implementation Memos, which "supersede[d] all prior agreements or contracts, including the 2016 MOAs."

---

[3] Rule 1:36-3, addressing citation to unpublished cases, does not preclude courts "from acknowledging the persuasiveness of a reasoned decision on analogous facts." Sauter v. Colts Neck Volunteer Fire Co. No. 2, 451 N.J. Super. 581, 600, (App. Div. 2017). The motion judge found the reasoning in Superior Officers persuasive on analogous facts regarding the extent of the MSRA's powers.

The motion judge then addressed "whether the MSRA authorize[d] the deprivation of earned wages." He found the MOAs did not deprive plaintiffs of "earned wages" because the MOAs were "subject to contingencies." The judge concluded the MOAs allowed plaintiffs to accept promotions without a pay increase "until a salary increase . . . [was] ratified between the City, the State Monitor, and [plaintiffs], or . . . awarded by an interest arbitrator." The judge explained the contingencies in the MOAs "never occurred," thus, "[d]efendants did not deprive [p]laintiffs of earned wages." The judge stated the MOAs "were entered into at [p]laintiffs' risk and understanding that the contingencies may never materialize."

Additionally, the judge found the Implementation Memos "encompass[ed] all prior salary agreements," including the MOAs. The judge explained the Implementation Memos "provided for an updated salary scale . . . [and] indicat[ed] that the revised compensation scale would be the 'entire compensation' for each employee." The judge determined "the intent of the Implementation [Memos was] to supersede all prior agreements relat[ed] to compensation and salary, including the 2016 MOAs" and "coupled with the broad authority under the MSRA to modify and terminate existing agreements,

12                                                      A-2478-23

[that was] enough to persuade the [c]ourt that the [Implementation Memos] [were] not silent on the issue of [p]laintiffs' earned wages."

Even if the Implementation Memos deprived plaintiffs of earned wages, the judge concluded "the MSRA specifically vest[ed] authority in [d]efendants to act in this manner." Citing N.J.S.A. 52:27BBBB-5(a)(3)(f) and (g), the judge explained, "[d]efendants' decision to modify the 2016 MOAs via the 2017 [Implementation Memos] was 'reasonable and directly related to stabilizing the finances . . . of the municipality in need of stabilization and recovery.'"

The judge also found plaintiffs' WPL and WCL claims were "futile." Citing N.J.S.A. 52:27BBBB-14, the judge concluded the terms of the MSRA prevailed in the event of any inconsistency between the MSRA and other applicable laws.

Based on his fact findings and legal conclusions, the judge declined to address defendants' res judicata and entire controversy arguments. Because defendants did not file a cross-appeal, we need not decide whether res judicata or the entire controversy doctrine also supported dismissal of plaintiffs' complaint.

On appeal, plaintiffs argue their entitlement to retroactive pay raises under the MOAs as "earned wages." They further contend the judge erred in

dismissing their complaint because (1) the MSRA does not authorize defendants to withhold earned wages, (2) cancelling the MOAs deprived plaintiffs of a "vested benefit," (3) the Implementation Memos did not cancel the MOAs, (4) the Designee failed to demonstrate the Implementation Memos were "reasonable," and (5) causes of action for breach of the duty of good faith and fair dealing and promissory estoppel were adequately pleaded to survive a motion to dismiss.

I.

We review de novo a judge's decision on a Rule 4:6-2(e) motion to dismiss. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). "The standard . . . to determine whether to dismiss a pleading for failure to state a claim on which relief may be granted is a generous one." Green v. Morgan Props., 215 N.J. 431, 451 (2013). "[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). The test is "whether a cause of action is 'suggested' by the facts." Ibid. (quoting Velantzas v. Colgate–Palmolive Co., 109 N.J. 189, 192 (1988)).

A complaint must be searched "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). "At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation[s] contained in the complaint." Ibid. On a motion to dismiss, "plaintiffs are entitled to every reasonable inference of fact." Ibid. "Nonetheless, if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107.

## II.

We first address plaintiffs' claim that defendants breached the MOAs by failing to provide retroactive pay raises to the promoted police officers. To establish a claim for breach of contract, plaintiffs must prove (1) "the parties entered into a contract containing certain terms," (2) the "plaintiffs did what the contract required them to do," (3) the "defendants did not do what the contract required them to do," and (4) the "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." Goldfarb v. Solimine, 245

A-2478-23

N.J. 326, 338-39 (2021) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)).

In support of their breach of contract claim, plaintiffs argue (1) the MSRA does not authorize withholding wages plaintiffs earned under the MOAs, (2) the Implementation Memos did not cancel the MOAs, and (3) defendants did not comply with the MSRA in cancelling the MOAs.

A.

Whether the MSRA Authorized Defendants to Cancel the MOAs

A court's "primary goal when interpreting a statute is to determine and carry out the Legislature's intent." In re Kollman, 210 N.J. 557, 568 (2012) (citing Allen v. V & A Bros., Inc., 208 N.J. 114, 127 (2011)). In interpreting a statute, "courts look first to the plain language of the statute." In re D.J.B., 216 N.J. 433, 440 (2014) (citing DiProspero v. Penn, 183 N.J. 477, 493 (2005)). Statutes are given their "ordinary and common-sense meaning." Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014). "If the language is clear, the court's job is complete." D.J.B., 216 N.J. at 440 (citing Kollman, 210 N.J. at 568). On the other hand, a statute is ambiguous if it "leads to more than one plausible interpretation." DiProspero, 183 N.J. at 492.

A-2478-23

The MSRA provides "the [D]irector shall have the authority to take any steps to stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery." N.J.S.A. 52:27BBBB-5(a)(3). To stabilize the finances or assist with the fiscal rehabilitation and recovery of the municipality in need of stabilization and recovery, the Director or Designee has the power to: (a) unilaterally amend or terminate contracts with the City, provided doing so is reasonable and directly related to stabilizing the City's finances; (b) unilaterally modify, amend, or terminate any CNA or term under such a CNA with the City, provided doing so is reasonable and directly related to stabilizing the City's finances; and (c) unilaterally modify any terms and conditions of employment under an expired CNA with the City. See N.J.S.A. 52:27BBBB-5(a)(3)(f),(g),(i). The MSRA "shall be construed liberally to give effect to its intent that severe fiscal distress in municipalities in need of stabilization and recovery shall be addressed and corrected." N.J.S.A. 52:27BBBB-13.

The MSRA's ordinary and common-sense language reflects the Legislature's intent to remedy the City's severe fiscal crisis. It is undisputed that the MOAs were contracts with the City. As such, the Designee was authorized to amend or terminate the MOAs under the MSRA. Moreover, because

17

plaintiffs' CNAs expired, the Designee could unilaterally terminate the MOAs and modify plaintiffs' terms and conditions of employment, including salary.

B.

Whether the Conditions for Retroactive Pay Raises
Materialized

In light of the MSRA's plain and unambiguous language, plaintiffs argue the MOAs are distinct from other State contracts and entitled the promoted officers to salary increases as "earned wages." Plaintiffs assert the MSRA does not authorize the withholding of earned wages. However, we agree with the motion judge that plaintiffs did not earn wages under the MOAs.

"It is a 'settled principle that parties bargaining at arm's-length may generally contract as they wish.'" JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 164 (App. Div. 2022) (quoting Whalen v. Schoor, DePalma & Canger Grp., Inc., 305 N.J. Super. 501, 505 (App. Div. 1997)). "[P]arties may make contractual liability dependent upon the performance of a condition precedent." Duff v. Trenton Beverage Co., 4 N.J. 595, 604 (1950). "Generally, no liability can arise on a promise subject to a condition precedent until the condition is met." Ibid. "As a general rule, there must be strict compliance with conditions precedent to the obligations created by a contract." JPC Merger Sub LLC, 474 N.J. Super. at 164.

Here, the MOAs included two specific conditions precedent to retroactive pay raises for promoted officers. A salary increase had to be (1) "ratified between the City, the State Monitor, and [plaintiffs]" or (2) "awarded by an interest arbitrator." Neither event occurred. The City, State Monitor, and plaintiffs never ratified a salary increase. Nor did an interest arbitrator award the promoted officers a salary increase. Because the MOAs' two contingencies were not met, there were no "accrued unpaid wages."

We also reject plaintiffs' assertion that the MOAs created vested rights. A vested right is "a present fixed interest which . . . should be protected against arbitrary state action." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 617-18 (2020) (quoting Phillips v. Curiale, 128 N.J. 608, 620 (1992)). Plaintiffs had no "present fixed interest" in retroactive pay raises. At best, plaintiffs had a conditional future interest that never materialized.

C.

Whether the Implementation Memos Terminated the MOAs

Alternatively, plaintiffs argue the Implementation Memos did not terminate the MOAs. Plaintiffs contend neither the Implementation Memos nor the settlement agreement in Police addressed the MOAs. They assert the judge

19

erred in relying on "the vague statement of 'entire compensation'" in the Implementation Memos to dismiss their claims.

A word or phrase is ambiguous if it is susceptible to "more than one plausible interpretation." DiProspero, 183 N.J. at 492. The Implementation Memos have but one plausible interpretation and were not ambiguous. The new salaries established under the Implementation Memos provided Sergeants would receive $95,000, Lieutenants would receive $115,000, and Captains would receive $125,000. A plain reading of the Implementation Memos reveals those "salaries shall be the entire compensation for each employee." Further, the Implementation Memos expressly stated, "[t]here shall be no supplemental compensation except for overtime where applicable." Under the Police settlement agreement, the parties explicitly agreed to the salaries and steps established under the Implementation Memos. We discern nothing ambiguous or susceptible to an alternative plausible meaning related to the phrase "no supplemental compensation."

## D.

### Whether the Implementation Memos Met the MSRA's Reasonableness Requirements

Plaintiffs alternatively argue that if we determine the Implementation Memos terminated the MOAs, then the Designee failed to satisfy the MSRA's

reasonableness requirement. The MSRA allows the Designee to unilaterally change or terminate any agreements to which the municipality was a party, including CNAs, if doing so is "reasonable and directly related to stabilizing the [municipality's] finances." N.J.S.A. 52:27BBBB-5(a)(3)(f) and (g).

Relying on Police, plaintiffs argue the MSRA required the Designee to (1) consider the public health, safety, and welfare, (2) ensure public services are provided in an efficient and cost-effective manner, (3) ensure the development of a comprehensive plan for financial rehabilitation and recovery, and (4) take action that is reasonable and directly related to financial stabilization. The judge in Police held the Designee's proposals must also be "factually based, uniform, fairly implemented, and objective" and "accompanied by an adequate explanation and foundation." Slip op. at 29. Plaintiffs contend "nothing in the record . . . suggests that the State's actions, . . . if permitted by the MSRA[,] were reasonable."

Because Police is an unpublished Law Division case, we are not required to adopt its reasonable test. See R. 1:36-3. Even if we were inclined to follow the reasonable test in Police, we are satisfied that test does not apply to the Implementation Memos. Police involved N.J.S.A. 52:27BBBB-5(a)(3)(g), which allowed the Designee to modify, amend, or terminate CNAs, provided

21

doing so was "reasonable and directly related to stabilizing" the municipality's finances.

However, this appeal involves subsection (i) of the same statute because the CNAs between the City and plaintiffs expired. N.J.S.A. 52:27BBBB-5(a)(3)(i) states, "with respect to any expired collective negotiations agreement . . . , [the Designee has the power to] unilaterally modify[] wages, hours, or any other terms and conditions of employment." The retroactive pay raises in the MOAs were a "terms [or] conditions of employment." Thus, under subsection (i), the Designee was authorized to modify any "terms [or] conditions of employment" absent the "reasonable" test triggered under subsections (f) and (g) of N.J.S.A. 52:27BBBB-5(a)(3).

It is well-settled that courts cannot "rewrite a plainly-written enactment of the Legislature." DiProspero, 183 N.J. at 492 (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). Nor can courts "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment." Ibid. (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952)). The Legislature chose to omit the word "reasonable" in subsection (i). Thus, we decline to read that term into subsection (i).

Even if we were to apply a reasonableness requirement, we are satisfied the Implementation Memos are reasonable because they were designed to address the City's dire financial situation. At the time the Designee issued the Implementation Memos, the City lacked sufficient revenue to operate. The CNAs constituted a significant portion of the City's overall budget. Police I, slip op. at 8. The Implementation Memos reduced the City's budget deficit to foster the City's financial recovery. Under the circumstances, the Implementation Memos were clearly reasonable.

III.

We next address plaintiffs' argument that the judge erroneously dismissed their good faith and fair dealing claim. We are not persuaded.

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). "Good faith is a concept that defies precise definition." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005). "Good faith conduct is conduct that does not 'violate community standards of decency, fairness or reasonableness.'" Ibid. (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001)). "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the

23

effect of destroying or injuring the right of the other party to receive' the benefits of the contract." Id. at 224-25 (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)). The covenant binds parties in "both the performance and enforcement of [a] contract." Id. at 224. However, the duty of "good faith and fair dealing cannot override an express [contract] clause." Sons of Thunder, Inc., 148 N.J. at 419.

"Proof of 'bad motive or intention' is vital to an action for breach of the covenant." Brunswick Hills Racquet Club, Inc., 182 N.J. at 225 (quoting Wilson, 168 N.J. at 251). A plaintiff must also show "the defendant's alleged misdeeds prevented the plaintiff from enjoying the full benefit of the terms of a particular bargain." Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 63 (2024). A plaintiff is required to demonstrate a defendant's alleged misconduct thwarted his or her "reasonable expectations" under the contract. Ibid. (quoting Brunswick Hills Racquet Club, Inc., 182 N.J. at 226).

Here, plaintiffs did not allege defendants violated "community standards of decency, fairness or reasonableness." Brunswick Hills Racquet Club, Inc., 182 N.J. at 224 (quoting Wilson, 168 N.J. at 245). Defendants acted consistent with the MSRA to aid the City's financial recovery. Nothing in the record demonstrates defendants acted in bad faith by complying with the mandates

24

under the MSRA, and the judge properly dismissed plaintiffs' claim for breach of the implied duty of good faith and fair dealing.

IV.

Plaintiffs also assert entitlement to retroactive pay raises based on the doctrine of promissory estoppel. We disagree.

To prevail on a claim for promissory estoppel, a party must demonstrate the following: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008). "Principles of estoppel must be evaluated with care when a party seeks to apply them against the government." In re Att'y Gen. Law Enf't Directive Nos. 2020-5 & 2020-6, 246 N.J. 462, 498 (2021). This is especially true when estoppel would "interfere with essential governmental functions." O'Malley v. Dep't of Energy, 109 N.J. 309, 316 (1987) (quoting Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954)).

Here, plaintiffs failed to establish a clear and definite promise, "the [s]ine qua non for applicability of this theory of recovery." Malaker Corp. S'holders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978). Nothing in the record supports a clear and definite promise by

defendants that police officers would receive retroactive pay raises. Rather, the pay raises were expressly contingent on future salary increases based on a ratified agreement among the parties or an interest arbitrator's award. While plaintiffs asserted "a general expectation" that a salary increase would happen, nothing in the record indicated defendants represented or guaranteed the parties would ratify a salary increase or an interest arbitrator would award a salary increase. See E. Orange Bd. of Educ. v. N.J. Schs. Constr. Corp., 405 N.J. Super. 132, 147 (App. Div. 2009).

Even assuming defendants specified a clear and definite promise to invoke promissory estoppel, any reliance by plaintiffs would not have been reasonable under the circumstances. Before executing the MOAs, the City's financial difficulties were well-known. Indeed, the police officers who accepted promotions without pay raises did so at the time the State asserted its MSRA powers to aid the City in its fiscal recovery. In the absence of reasonable reliance, plaintiffs were unable to satisfy the elements necessary to prevail on a promissory estoppel claim, and the judge properly dismissed that claim.

V.

Plaintiffs also contend they are entitled to retroactive pay raises under the WPL and WCL. We reject these arguments.

26

The WPL "governs the time and mode of payment of wages due to employees." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 302 (2015.) "The WPL is designed to protect an employee's wages and to assure timely and predictable payment." Id. at 313.

The WCL "prescribes a process for the collection of unpaid wages due." Musker v. Suuchi, Inc., 479 N.J. Super. 38, 43 (App. Div. 2024), reversed on other grounds, ___ N.J. ___ (2025). "Among other things, the [WCL] empowers the New Jersey Department of Labor and Workforce Development to investigate and remedy alleged wage violations." Ibid.

Plaintiffs failed to state a claim under the WPL and WCL because they were never due retroactive pay raises. As we previously stated, the retroactive pay raises under the MOAs were contingent on a salary increase either ratified by the City, State, and plaintiffs, or awarded by an interest arbitrator. Neither event happened in this case.

Moreover, the unequivocal language of the MSRA warrants rejection of plaintiffs' WPL and WCL claims. The MSRA provides:

> Notwithstanding the provisions of any other law, rule, regulation, or contract to the contrary, . . . the [D]irector shall have the authority to take any steps to stabilize the finances . . . of the municipality in need of stabilization and recovery.

27

[N.J.S.A. 52:27BBBB-5(a)(3) (emphasis added).]

"The Legislature's use of the word 'notwithstanding' is significant." Kennedy v. Weichert Co., 257 N.J. 290, 310 (2024). "In construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." Ibid. (quoting Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18 (1993)).

In using the term "notwithstanding" in the MSRA, the Legislature expressed its clear intent that the Director's authority would supersede any conflicting law, rule, regulation, or contract. The MSRA states: "[t]o the extent any inconsistency exists between the terms of [the MSRA] and other applicable laws, the terms of [the MSRA] shall prevail." N.J.S.A. 52:27BBBB-14.

When applying the unambiguous language of the MSRA, if the WPL and WCL conflict or create any inconsistency with the Director's authority under the MSRA, the MSRA prevails. Because plaintiffs' interpretation of the WPL and WCL conflict with the Director's authority under the MSRA, the MSRA prevails.

Further, the WPL provides "[n]o employer may withhold or divert any portion of an employee's wages unless . . . [t]he employer is required or

empowered to do so by New Jersey or United States law." N.J.S.A. 34:11-4.4 (a). Because the MSRA empowered the Director to withhold wages for City employees as a municipality in need of stabilization and recovery, there was no violation of the WPL.

Having reviewed the record, we are satisfied the motion judge correctly dismissed plaintiffs' complaint for failure to state a claim upon which relief may be granted.

To the extent we have not addressed any of plaintiffs' remaining arguments, the arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2478-23